[No. 14493.    Department Two. — May 16, 1892.]

A. M. PLUMMER, OVERSEER, ETC., RESPONDENT, v. W. C. SHELDON ET AL., APPELLANTS.

HIGHWAY— PUBLIC USER OF ROAD — ABANDONMENT TO THE PUBLIC — ACQUIESCENCE FOR FIVE YEARS — PRESUMPTION. — Where no objections are made by the owners of land or their predecessors for more than five years to the use of the land by the public for a public road, the legal presumption is, that the owners abandoned possession of the land for the road.

ID. — CONTINUANCE OF HIGHWAY. — A public highway laid out or erected as such by the public, or if laid out or erected by others, dedicated or abandoned to the public, continues to exist until it is vacated or aban-

doned by order of the board of supervisors of the county in which it is situated, or by operation of law or judgment of a court of competent jurisdiction.

CONSOLIDATED appeals from judgments of the Superior Court of Sacramento County, and from orders de-denying new trials.

The facts are stated in the opinion.

*George A. Blanchard,* for Appellants.

The testimony does not show that either of the appellants ever performed any act whatever showing or tending to show a dedication of the premises for a road. To make out a title by dedication, it must be affirmatively established that there was a clear and unequivocal intention to dedicate; that in the case of roads in the country, stronger proof of dedication is required than in cases of streets or lands in a city or town. (*Harding* v. *Jasper,* 14 Cal. 643; *Tate* v. *Sacramento,* 50 Cal. 242; *Irwin* v. *Dixon,* 9 How. 31; Angell on Highways, secs. 131, 132, 134.)

*Frank D. Ryan,* and *Elwood Bruner,* for Respondent.

The case of *Harding* v. *Jasper,* cited by appellants, fully sustains the judgments in the cases at bar, and that a dedication was made by the owners. (See *Harding* v. *Jasper,* 14 Cal. 642.) A dedication once made and accepted cannot be revoked. (*Cook* v. *Harris,* 61 N. Y. 448.) The road became a public road by "right of prescription," having been used continuously for more than five years under a claim of right, with the knowledge and acquiescence of the owners. (Pol. Code, sec. 2619; *Bolger* v. *Foss,* 65 Cal. 250; *Kripp* v. *Curtis,* 71 Cal. 62.) Some contention was made upon the trial of the cause that part of the road was upon government land, and that the public could not acquire title to government land for the purposes of a road, but there was no force to the contention, for dedication by uses or otherwise is as easily proven against the government as against an individual. (*Regina* v. *Eastmark,* 11 Ad. & E. 876; *Phipps* v. *State,* 7 Blackf. 512.)

FOOTE, C. — The plaintiff, a road overseer in the county of Sacramento, brought a separate action against each of the appellants here for the obstruction of a public road. For convenience, the appeals. are to be heard upon a single consolidated statement on motion for a new trial, and the judgment roll of each case.

The court below found in favor of the plaintiff in each case, and from the judgment therein rendered, and orders denying a new trial, these appeals are prosecuted. The determination of one involves that of the others.

The main questions raised for a reversal of the judgments and orders are, that the evidence does not support the findings; and that even if the findings are supported by the evidence, they do not justify the judgment.

The facts as set out in the findings are about these: About twenty-five years before these actions were brought, there was a certain road in Sacramento County, called the Grant Line road, which was supposed to run along the base line of a grant of land from the Mexican government, and patented by the government of the United States to one Jared Sheldon. The parties who are defendants here owned land included in this grant, and along the westerly boundary of the grant this road ran and was much traveled. It was a thoroughfare commencing at the upper Stockton road, and followed thence the line of the grant, as first surveyed by one Cleal, to a public road called the Jackson road, which ran from the city of Sacramento to the town of Jackson, in Amador County. This Grant Line road was sixty feet wide, and was laid out on the ground by throwing up a furrow on each side thereof, and harrowing in the center, and was plainly and visibly marked upon the ground throughout its course. It was laid out by those who supposed they were acting under the authority of the board of supervisors of the county, although the proceedings taken, as shown in the evidence, do not appear to have been entirely correct or sufficient to constitute it a public road. From the time it was so laid out, it was traveled by the public, and constituted, for a period of ten or twelve

years, the main line of travel between the southeastern or lower part of the county of Sacramento, and Jackson and Placerville, and was commonly called and known as the Grant Line road. After that time, the travel fell off to some extent, but the road continued to be used by the public on the Cleal line as originally laid out until some time in the years 1873 and 1874.

About April, 1873, the patent to the grant from the government of the United States was received and recorded, and it then appeared that what had been always supposed, according to the Cleal survey, to be the true base line of the grant was not such line, but that the true line was that established by another, called the "Thompson survey." The effect of this was to throw the base line of the grant farther westward, commencing at a little town called Sheldon, and running to where the road in controversy intersects the Jackson road. Thus it happened that what was the original Grant Line road now appeared to be not on the line, as had been supposed, but inside the grant, and varying from a few feet at Sheldon to several hundred feet at the intersection of the Jackson road.

After this last base line had become known and established, the road in controversy, not having been up to that time generally fenced out by adjoining proprietors, they began to fence out to that line and inclose their lands, and by common consent, the thoroughfare was changed from the Cleal line to the Thompson line, and the old road-bed become a part of the inclosed premises. But those building fences across the Cleal line left outside these fences enough of their land for the road along the Thompson line. That is, they all recognized the road to have been established as a thoroughfare, but changed its location, by common consent, to where it was intended originally to run, — that is, along the true line of the grant.

Both before and since this change, down to the year 1883, from about the year 1858, it was an open road traveled by the public and generally recognized in the

community and by the owners upon said grant as a
public highway, and was worked and repaired in differ-
ent parts by the road authorities of the county. No ob-
jection was ever made by any of the land-owners along the
line of the road to its maintenance as a public highway,
up to the year 1883; and since this road was first traveled
there has been no other road, on or near the grant line,
pursuing the same general course, and no other road
leading so directly to the towns of Jackson and Placer-
ville, from the lower part of the county of Sacramento.

When the road was changed by general consent from
the Cleal to the Thompson line, the defendant Mull
owned a portion of the land in the Sheldon grant, and
also owned a piece of railroad land which was west of
and adjoined a portion of the grant land which one Cot-
ton then owned. The grant land of Mull has never been
fenced, but about the year 1873–74 he did fence his rail-
road land, and in doing so left twenty-five or thirty feet
of that land between it and the grant line where Cotton
owned outside his, Mull's, fence. About that time, Cot-
ton (who owned Sheldon grant land opposite Mull's
railroad land) threw up a ditch on his land which was
not fenced about thirty feet inside his land; this left
about sixty feet for a road between Mull's fence and
Cotton's ditch. This space was mutually intended by
Cotton and Mull for the purposes of said grant line road,
and was thereafter used by the public until about 1883,
when Mull fenced and obstructed the road-bed thus left
by him and Cotton in 1873–74.

J. C. Belcher, the husband and immediate predecessor
of Sarah W. Belcher, was the first of the grant land-
owners to fence his line in 1873 out to the Thompson
line. He set his fence inside his line thirty feet, for the
express purpose of leaving space for the grant line road.
The land west of and opposite to his was at that time
government land, and was unfenced. About the year
1873 he died, and the defendant, his widow, thereafter
bought a piece of government land, which lay west of
and adjoining her grant land. In 1883, desiring to have

both her tracts of land under a common fence, she fenced across the road here involved, and up to her government land on its west side, thereby inclosing and obstructing the highway, and compelling the travel to turn out at her fences and make a circuit of her government land, and these fences she has since maintained.

As to Sheldon, it appears that at the time the grant line road was changed from the Cleal to the Thompson survey base line, Mr. Cotton, above mentioned, owned a portion of the Sheldon grant south of the Jackson road, which was then unfenced. When the change was made, Cotton threw up, as heretofore stated, a ditch on his land thirty feet inside his line, which was intended to mark the line of his land abutting on what he left for the road on his side thereof. About that time, Mull, who owned railroad land west of and adjoining Cotton's said land, as before stated, fenced his, Mull's, land, and left outside his fence twenty-five or thirty feet of his land, which, with the strip left out by Cotton, made a strip of land sixty feet wide between the Cotton ditch and the Mull fence, which Mull and Cotton fenced out for the purposes of the said grant line road. This remained thus until 1883, when Mrs. Belcher obstructed the road, as above stated. After that, about 1885, Sheldon (the immediate successor of Cotton of a portion of the interest held by Cotton in the land above mentioned) fenced in about one half of the grant line road-bed, so that it was inside his inclosure. The findings are supported by the evidence, as we think.

The only question then left for determination is, whether, from the facts as found, it follows, as an ultimate fact necessarily deduced therefrom, that the land here involved was dedicated by the defendants or their predecessors in interest for the purposes of a public road.

We think that the facts as found are sufficient to show that the acts of defendants or their predecessors are inconsistent with any construction, except that the land was used by the public for a highway with the consent and approval of the owners thereof.

We do not think that any of the cases in opposition to this view, cited by the appellants, involved any such state of facts as those here.

And the facts of the case, as set out in the findings, make the conclusion inevitable that at least the owners of the land abandoned possession of it for a public road, and that therefore such road thus established on the land is the public highway, for no objections were made by the owners of the land or their predecessors for more than five years as to the use of the land for a public road, either on the Cleal or the Thompson line, and the legal presumption is, that the owners abandoned possession of the land for the road.

" Public highways," as defined by the code, " are roads, streets, alleys, lanes, . . . . laid out or erected as such by the public, or if laid out or erected by others, dedicated or abandoned to the public." (Pol. Code, sec. 2018.

" A highway thus created continues to exist until it is vacated or abandoned by order of the board of supervisors of the county in which it is situated, or by operation of law or judgment of a court of competent jurisdiction." (*Babcock* v. *Welsh*, 71 Cal. 402; Pol. Code, secs. 2619–2621; *Bolger* v. *Foss*, 65 Cal. 250.)

We conclude, therefore, that the contentions of the defendants are without merit, and advise that the judgments and orders be affirmed.

Temple, C., and Vanclief, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgments and orders are affirmed.

Hearing in Bank denied.