By the court.
There can be no doubt but the plaintiff is entitled to recover in both suits. The plaintiff complains of an injury done to him in his freehold, and has fully proved his case. How then do the defendants justify themselves?
Their first plea set up, that the place where the supposed trespass was committed, was a public highway, has been abandoned. The facts would not warrant it. But had it *169 been a highway, would it have been a justification? The public would in that case have been entitled to a right of passage, but the title to the soil, the stones, the wood or the grass growing thereon, would have still continued in the owner of the lands. The use of the ground would be dedicated to the public for particular purposes only. The books lay it down, that in England, the right to the bed of a navigable river is presumed to belong to the crown, and of course in such case here, to the commonwealth, usque ad jilum aqiicz; but the right to the adjoining land rests in the owner of the soil. Hence arises the right to wharves in the city of Philadelphia, and commercial ports. No one can use them without making compensation to the respective proprietors.
The case in i Burr. 293, depended on a right founded on immemorial usage to a track path on each side of the river Tees. In the case in Dougl. 425, the right of the mayor and commonalty of the city of Eondon to make the horse-towing path on the soil of the river Thames, was derived under powers vested in them by the statute of 14 Geo. 3, cap. 91, and 17 Geo. 3, cap. 18.
*The defendants cannot ground their right to land or receive freights on another person’s freehold upon any custom, for none such exists. The late proprietaries claimed a right by way of prerogative, to grant patents for ferries; but they never pretended this claim where the pat-entee was not possessed of lands on both sides of the water, or at least had not the permission of the owners of the landings. The acts of the legislature in the instances cited by the plaintiff’s counsel, strongly negative the idea, that a person may trespass on the property of his neighbour with impunity, even by landing his boats on the rocks of an opposite shore, the freehold of another. The judgment on the demurrer in 3 Term Rep. 260, fully establishes the doctrine which must govern this case on the principles of the common law.
The usage set up by the defendant as to this ferry, will not operate as a good ground of defence. While the holders of the ferries on each side of the river enjoyed the mutual advantage of landing on each others shore, each derived a benefit from the permission of his opposite neighbour. A reciprocity of indulgence and good .offices was advantageous and necessary on both hands; but this was obligatory on neither, longer than they thought proper or deemed it convenient. Therefore when Eppele discontinued the old ferry, and sold his landing to the plaintiff, whose new ferry lay lower down the river, as the plaintiff his assignee could receive no benefit from the landing on the opposite shore, he was under no moral or equitable obligation to continue a licence originally founded on mutual advantage. The plaintiff determined this licence by forbidding the defendants and *170 their boatmen from landing on his shore, and they persisting after such notice, are guilty of a trespass, for which they must make reparation in damages.
Cited in 3 Watts, 219, in support of the decision that the owner of a private ferry has no right to land boats and passengers at the terminus of a public highway, between high and low water mark, on the opposite margin of the river, without the consent of the owner of the soil. Cited for a similar purpose in 9 S. & R., 32; 8 Watts, 439.
Cited in 8 Pa., 294, in support of the decision that trover lies for timber cut by a stranger on the land of the plaintiff, though within the lines of a public road.
Cited in 49 Pa., 109, where the decision was that in action for damages cannot be sustained against a railroad company for cattle killed or injured upon the track at the crossing of a public road.
Cited in 78 Pa., 167, in support of the general proposition that the right to the soil of a highway continues in the owner of the land, subject only to the right of way in the public.
Messrs. Ingersoll, C. Smith and Henry pro quer.
Messrs. Duncan, Kittera and Hanna pro def.
The suits being brought to try the right of the defendants to land and receive freights on the plaintiff’s shore, it was then agreed, that the jury should give a verdict for the plaintiff with six pence damages and six pence costs, which was done accordingly.