[Sac. No. 513.    Department Two.—October 25, 1899.]

## CALIFORNIA NAVIGATION AND IMPROVEMENT COMPANY, Appellant, v. UNION TRANSPORTATION COMPANY, Respondent.

DEDICATION—HIGHWAY—LANDING AND WHARF —Evidence of an intention to dedicate land to one public use does not imply an intention to dedicate it to an entirely different use; and proof of the dedication of a highway to and from a landing outside of a town or city does not establish dedication of the land to public use for landing and wharfage purposes. even though the highway may be identical in situation and area with the landing.

ID.—DEDICATION OF LANDING AND WHARF, HOW SHOWN—EXCLUSIVE USES OF PUBLIC.—To constitute a dedication of land for a wharf or landing place on the shore of navigable waters, there must be an intentional abandonment thereof by the owner to the use of the public exclusively, and not a mere use by the public in connection with a user by the owners in such measure as they may desire.

CXXVI. CAL.—28

ID.—PRESCRIPTIVE RIGHT, NOT OBTAINABLE BY PUBLIC.—The public cannot acquire a right by prescription or custom to land on the shore of a navigable stream and unload freight thereon, and thus encumber the land, independently of any dedication thereof by the owner to exclusive use by the public.

ID.—DEDICATION NOT PRESUMED FROM USER—EVIDENCE.—The dedication of a wharf or landing to public use cannot be presumed as a mere inference from prescriptive user thereof by the public, but should be proved either by writing or by public and unequivocal declarations or acts; and the evidence of public user is good only to show that a dedication by the owner has been accepted and enjoyed by the public, and to corroborate and explain other evidence or probabilities.

ID.—INTENTION OF OWNER ESSENTIAL—UNAUTHORIZED ACTS OF AGENT.— Dedication must be made by the owner of the land, and his intention to dedicate it must be made to appear in the facts or circumstances of the particular case; and it cannot be inferred from any unauthorized acts or declarations of an agent in charge of the land.

ID.—AGENCY TO RECLAIM LAND—AUTHORITY TO DEDICATE NOT IMPLIED.— The appointment by the owner of an agent to carry out the reclamation of land, and to manage the same, does not imply any authority to the agent to dedicate any portion of the land to the public for wharves or landings.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. Edward I. Jones, Judge.

The facts are stated in the opinion.

Woods & Levinsky, and Thomas H. Breeze, for Appellant.

There is no evidence of the dedication of the land to the public for wharfage or landing purposes. Such dedication cannot be inferred from the existence of a highway, nor from user by the public in common with user by the owners, nor from any prescriptive user. (*Chambers v. Furry*, 1 Yeates, 167; *Post v. Pearsall*, 22 Wend. 425; *Pearsall v. Post*, 20 Wend. 111; *Talbott v. Grace*, 30 Ind. 389; 95 Am. Dec. 703; Washburn on Easements, 4th ed., 555; *State v. Wilson*, 42 Me. 9, 27; *Horn v. People*, 26 Mich. 222.) An agent in charge of land without express authority to dedicate the land to public use has no implied authority to do so. (*Bushnell v. Scott*, 21 Wis. 451; 94 Am. Dec. 555.)

Fairall & Carroll, and Reddy, Campbell & Metson, for Respondent.

Land dedicated for a street running to a water front, includes the right of the public to use it for wharfage and landing purposes. (*Barney v. Keokuk*, 94 U. S. 324, 336; *Haight v. Keokuk*, 4 Iowa, 199; *Godfrey v. Alton*, 12 Ill. 29; *Alves v. Henderson*, 16 B. Mon. 131; *New Orleans v. United States*, 10 Pet. 662; *Rowan v. Portland*, 8 B. Mon. 250; *Mankato v. Willard*, 13 Minn. 10-13; 97 Am. Dec. 208; *Potomac Steamboat Co. v. Upper Potomac etc. Co.*, 109 U. S. 684; 1 Dillon on Municipal Corporations, sec. 110, and note.) A general agent may dedicate land to public use, and the principal may be estopped by his acts. (*United States v. Chicago*, 7 How. 185; *Brown v. Manning*, 6 Ohio, 303, 304; 27 Am. Dec. 255; *Barclay v. Howell*, 6 Pet. 498; 2 Herman on Estoppel, sec. 1143.)

CHIPMAN, C.—Injunction. Defendant had judgment, from which and from the order denying its motion for a new trial plaintiff appeals. Plaintiff and defendant are corporations engaged in transporting freight and passengers by river between the city of Stockton and the city of San Francisco and intermediate points. About June 1, 1897, plaintiff became lessee of a certain piece of land situate on Roberts Island, in San Joaquin county, known as Wakefield's Landing, the same being a portion of the so-called Wakefield ranch, adjacent to the San Joaquin river. It is alleged in the complaint that defendant, "without the consent of plaintiff and against the will of the said plaintiff, has for many days past continuously entered upon the said land and premises, and used the same for the purpose of making landings and receiving therefrom freight and passengers, and of delivering thereon freight and passengers, and that the said defendant, although requested so to do, has refused to cease from said use of the said land and premises, and threatens to, and will, unless restrained, . . . . continue to enter upon and use the said land and premises for the aforesaid purposes." It is also alleged that said entry has caused and does cause continual and daily damage, and that to recover the amount of damages suffered, and which will be suffered, will require a multiplicity of suits. The defense to the action set up in the answer is that plaintiff is not damaged, and that the leased

premises had long been dedicated and set apart and used as a public highway, and denies any right in plaintiff's lessor to lease the same; and also that the said premises had been, in 1876, set apart and dedicated as a free public wharf and landing, and accepted and used by the public as such. The cause was tried upon the complaint and answer, no demurrer to either having been interposed. At the request of defendant and against plaintiff's objection, certain questions were submitted to a jury and answered as follows:

1. That plaintiff was not in possession of the premises on July 8, 1897, "otherwise than as one of the public"; 2. The premises on that day were "a part of a public highway which had theretofore been dedicated to the public by the owners of the land"; 3. On that day the premises constituted a public landing which had been dedicated to the public prior to the commencement of this action by the owners of the land, and the same had been accepted by the public by the use and occupation of the same for twenty years last past; 4. That plaintiff had not been damaged other than nominally; 5. The premises, "for more than twenty years prior to the commencement of the action, have been continuously, peaceably, uninterruptedly, notoriously, openly, and with the knowledge of plaintiff and its grantors, used as a public highway, road, and landing-place by the public in general, and by all persons who chose to travel over said highway, road, and landing-place, and use the same." The court adopted these answers as part of the findings and also found that on June 1, 1897, one Ralph P. Lane was the owner of the fee of the property in controversy, and that plaintiff, "by means of mesne leases, leased the same from said Lane."

The principal question involved is: Did the evidence justify the decision that Wakefield Landing was, prior to the commencement of the action, dedicated to public use as a public landing-place, and had defendant a right to occupy it for landing purposes against plaintiff's consent? The evidence in support of respondent's position was of two classes—one relating to the dedication of a highway, and the other to the long use by the public and the dedication to the public of the land for a wharf and landing:

The land in question is part of a tract of about thirty-eight

thousand acres, which, in 1876, was the property of the Glasgow-California Land Company. At that time Roberts Island was an unreclaimed swamp, and its reclamation was undertaken in two parts—called the upper and the lower divisions—Wakefield Landing being on the lower division. As the levee system progressed the land was occupied from time to time by tenants of the company and later by purchasers from it. Roads were used indiscriminately at first, but finally settled down in recognized locations. Landing-places also became necessary at different points upon the island for landing supplies and receiving the products grown on the land. There were several of these landing-places, and, among others, the one in question. It consisted of a levee, somewhat higher and broader than the levees generally protecting the island. The leased land embraced a strip along the river one thousand feet in length and one hundred feet in width, measured from the river.

The evidence tends to show that roads leading from the cultivated portions of the island approached this landing from above and below, following inside of the levees, and converging at Wakefield Landing, where they ran upon this more elevated land, which formed both a levy and roadway. Some of the witnesses testified that the road ran all over this higher ground, and that the road and levee were practically identical at that place. The evidence tended to show use by the company and by the public of these roads as public highways for many years by acquiescence of the agent having charge of the property. Whether this was sufficient to justify the finding need not be decided, but, assuming that it was sufficient for that purpose, we cannot concur with respondent in his contention that proof of dedication of the highway establishes a dedication of the land for a landing and wharves, even if identical in situation and area with that used for the highway, which is by no means clearly shown to be the fact. The evidence is, that the levee was built up and broadened out for landing purposes at this point, and the roads came to the landing; the landing did not go to the roads. The dedication of the roads was entirely consistent with nondedication of land for wharfage purposes. Nor can we agree with respondent that the dedication of the *locus in quo* for road purposes implied a dedication for a landing, or

that the right to use the road for landing purposes was included in the right to use the dedicated strip for a road. Evidence alone of an intention to dedicate to a particular use cannot be considered as implying an intention to dedicate to another and entirely different use.

Instances are numerous where highways are laid out along the shores of rivers, lakes, bays, and the ocean, both for pleasure and for general utility, as highways. We know of no principle of law that would justify us in holding that the owner of the soil, over which any such highway is laid out, is to be deemed to have dedicated the banks or shores to the common use of the public for landing purposes by dedicating a strip of land as a highway. In the case of *Chambers v. Furry*, 1 Yeates, 167, the question arose under an alleged right of fishery to land on the Susquehanna river at a point where a public highway approached the river. The action was trespass, and the defendant justified on the ground, among others, that there was a highway laid out to the river at the point in question. The evidence showed that the highway terminated some perches distant from where the boats landed and received their freight. The court said: "But had it been a highway, would it have been a justification? The public would in that case have been entitled to a right of passage, but the title to the soil, the stones, the wood, or the grass growing thereon would have still continued in the owner of the lands. The use of the ground would be dedicated to the public for particular purposes only. The books lay it down that in England the right to a bed of a navigable river is presumed to belong to the crown, and, of course, in such case here, to the commonwealth: *usque ad filum aquae;* but the right to the adjoining lands rests in the owner of the soil. No one can use them without making compensation to the respective proprietors."

The rule as held in that early case has been often since approved, and we think is the correct rule except as it seems to have been modified in relation to streets in towns and cities. (See *Cooper v. Smith*, 9 Serg. & R. 26; 11 Am. Dec. 658; *Chess v. Manown*, 3 Watts, 219.)

The question was more fully considered and was elaborately discussed in the case of *Pearsall v. Post*, 20 Wend. 111; and

later, on appeal to the court of errors, *Post v. Pearsall*, 22 Wend. 425. The action was trespass for entering upon the land of plaintiff and depositing thereon a quantity of manure. The case had very full consideration both in the supreme court and in the court of errors. After reviewing the cases, including those above cited, Mr. Justice Cowen, speaking upon the point before us, said: "The amount of these cases is that roads are made to be traveled on, and not to be occupied, much less blocked up by sloops and scows. If the contrary were allowed, the ferryman might derive a profit from his toll, which belongs to the owner, under pretense of a free passage. The intention of laying out a public highway is to make a free passage, not a profit to the owners of water craft. The easement is for land, not water carriage, and, therefore, is not to be touched by the latter, without the permission of the owner." Again he remarked: "Independent of what I take to have been the plain intent of the legislature, a landing, even though for the purpose of direct transit, is more than a highway. The relative rights both of owner and passenger in a highway are perfectly understood and familiarly dealt with by the law. Subject to the right of mere passage, the owner of the soil is still absolute master."

Respondent contends that the cases to which reference has been made have been practically overruled by the cases cited in its brief.

The case of *Barney v. Keokuk*, 94 U. S. 336, is cited, among others, as adverse to appellant's contention. Reference is made in that case to *Haight v. Keokuk*, 4 Iowa, 199, from which the supreme court quoted approvingly, as was done in several other of the cases cited: "The streets of a town are fairly subject to many purposes to which a highway in the country would not be. More regard should be paid to the object and purpose than to the name. The ways of a town would be of comparatively little use if the citizens and traders could not deposit their goods in them temporarily in their transit to the storehouse; and so of other things, and so it is of the wharf."

It will be observed that the court expressly distinguished the conditions existing in a town or city as to streets from those existing in the country in suburban regions, for the court said: "The streets of a town are fairly subject to many purposes to which a highway in the country would not be."

This distinction is expressly recognized in *Barney v. Keokuk, supra,* and by Mr. Dillon, where he states the rule in his work on Municipal Corporations, section 633, and also in the leading case of *Cincinnati v. White,* 6 Pet. 431.

I do not find any case, and none is cited by respondent, where the doctrine is laid down as universally applicable that the dedication of a highway along the shore of navigable waters outside of towns and cities carries with it a right to land vessels indiscriminately on such highway and use it as a public landing place to discharge and receive freight and passengers.

Conceding that there may be a dedication of land for wharves or landing-places on the banks of navigable waters, we are brought to consider whether the evidence shows such dedication here. First, it should be determined in what manner may dedication be made and by what evidence may it be proved. We have seen that it cannot follow from proof of dedication as a highway. The authorities hold that "to constitute a dedication there must be an abandonment by the owner to the use of the public exclusively, and not a mere use by the public in connection with a user by the owners in such measure as they may desire. Nor can the public acquire a right by prescription or custom to land on the shore of a navigable stream, to unload freight, and thus encumber the land." (Washburn on Easements, 205, 555; *Talbot v. Grace,* 30 Ind. 390; 95 Am. Dec. 703; *Cincinnati v. White, supra; Pearsall v. Post, supra; Post v. Pearsall, supra; Curtis v. Keesler,* 14 Barb. 511; *Chambers v. Furry, supra,* and other cases.)

In *Cincinnati v. White, supra,* the court shows that rights of this description do not rest upon length of possession.

We think the rule in a case such as this one, where not controlled by statute, is correctly stated in *Post v. Pearsall, supra,* as follows: "Dedication cannot be presumed as a mere inference from a prescriptive user, but should be proved to have been made by writing or by public and unequivocal declaration or acts; that the evidence of user is good only to show that such dedication was accepted and enjoyed, and to corroborate or explain other evidence or probabilities."

Mr. Dillon says: "Upon the adjudged cases there exists some doubt whether the public can prescribe for or claim, by way of

implied or common-law dedication, land for landing purposes."
But he adds: "There may be an express dedication for this pur-
pose, and, on principle, within the limits of a municipality bor-
dering on navigable waters, it would seem to be going too far
to say that in no case can a common-law dedication of land for
a public wharf or landing be shown by user, and the proprietor
be estopped from denying the right of the public to such use."
(2 Dillon on Municipal Corporations, sec. 649.)

The dedication must be made by the owner of the land, and
an intention on the part of the owner to dedicate is absolutely
essential; and, unless such intention can be found in the facts
and circumstances of the particular case, no dedication exists.
(2 Dillon on Municipal Corporations, secs. 635, 636.)

Apart from evidence tending to show that the public used the
landing in question for a period of years with the consent of
the agent of the owner. Mr. Ferris, the evidence is slight and
inconclusive.   The land was owned until quite recently by a
corporation whose principal place of business was in San Fran-
cisco.   There is no evidence that any stockholder or director
or officer of the corporation ever visited Roberts Island, or took
any part in the establishment of Wakefield Landing, or directly
authorized or ratified its establishment.   Mr. Ferris was the
land company's engineer and agent at the island, but there is
no evidence as to how far his authority extended, and not the
slightest direct evidence that he had authority to dedicate any
of the land to the public for wharves or landings.   He testified
for defendant: "I have known Roberts Island for twenty-one
years.   I have been an agent of the people owning it for the
greater part of that time, and engaged in carrying out its recla-
mation and management.   I am no longer engaged with the
people who own it.   I have some interests of my own there, but
the people by whom I was employed the greater part of the
time have no further interest there.   I ceased to be their agent
in 1892."   This is the extent of the evidence as to his power,
and it does not seem to us that his agency to carry out the
reclamation of the land implied any authority to dedicate any
portion of it to the public for landings.

There is an entire lack of evidence from which it can be in-
ferred that Mr. Ferris had authority to dedicate this land to the
public for a landing.   Taking his evidence in its entirety, it

shows that, so far as he assumed to express what the intention of the owners of the land was, there never was any intention to yield control of the land to the public, without which there could be no dedication. Respondent contends that when Ferris testified that "it was the intention of the owners to have this landing for the use of the tenants and for the use of the public," he testified to what the owners did; that he stated their intention as a fact. We do not think it was competent for Ferris to deprive the owners of their property by testifying to their intention, unsupported by any facts tending to show that he knew what their intention was, and unaccompanied by any acts or declarations of the owners. Besides, his evidence clearly showed that the intention of the owners, to which he testified, was to retain in themselves the control of the landing, and this introduced an element wholly inconsistent with legal dedication.

The evidence does not justify the finding that the premises in question were, prior to the commencement of the action, a public landing which had been dedicated to the public.

We do not feel called upon to indicate the particular facts and circumstances which should be made to appear before an equity court will interpose to restrain a trespass, such as is here intended to be set forth. Attention is invited to the decision in the case between the same parties reported in *California Nav. etc. Co. v. Union Transp. Co.*, 122 Cal. 641, which was decided on a general demurrer to the complaint since this present action was tried. The facts proven in the case now here are no stronger than as admitted by the demurrer in the case cited.

The complaint in this case is substantially the same as in the case cited, and must have shared the same fate had a general demurrer been interposed to it. The findings, however, do not support the judgment, and it should therefore be reversed, and we so advise.

Britt, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed.    McFarland J., Temple, J., Henshaw, J.