## Falco v. Bryn Mawr Trust Company, Administrator.

*Negligence—Owner of property along highway—Tree—Decayed limb falling onto highway — Constructive notice — Evidence — Sufficiency—Property leased at time of accident.*

1. An abutting property owner is liable for damages caused by the fall of the limb of a tree which stands outside the fence-line of his land and within the limits of a State highway where he had constructive notice of the decayed and dangerous condition of the tree.

2. Evidence that the decayed and worm-eaten limb was noticeable for at least nine months before the accident is sufficient to charge the owner with constructive notice of its dangerous condition, and his liability continues even though at the time of the accident the premises were occupied by a lessee.

*Practice — Trial — Defense—Suit brought against wrong party—No affidavit of defense filed—Practice Act of May 14, 1915.*

3. Where no affidavit of defense has been filed, the defendant is prevented by section 16 of the Practice Act of May 14, 1915, P. L. 483, from raising as a defense that the wrong party was sued.

Trespass for damage to automobile. Motion for new trial and judgment *n. o. v.* C. P. Montgomery Co., Feb. T., 1925, No. 40.

*F. Kenneth Moore*, for plaintiff; *H. M.* and *R. J. Brownback*, for defendant.

KNIGHT, J., Jan. 24, 1927.—According to the evidence produced by the plaintiff, on the morning of Sept. 30, 1924, Joseph Falco was driving the plaintiff's truck toward Philadelphia over the State highway (Route No. 145), known as Sandy Hill Road, in Montgomery County. It was before dawn and a foggy, rainy, stormy morning. The estate of David Hess, deceased, had been the owner for a number of years of a farm of ninety-three acres fronting on the Sandy Hill Road, in Plymouth Township.

As Joseph Falco was driving the plaintiff's truck by the Hess property on the morning in question, a large limb of a tree, which stood outside the fence-line of the Hess farm, fell about five feet in front of the plaintiff's truck. The driver was unable to stop in time to avoid the fallen limb and the plaintiff's truck was damaged in the resulting collision.

Plaintiff sued in trespass, alleging that the tree was in an obviously decayed and dangerous condition and that the defendant had constructive notice thereof. The case was tried before a jury and resulted in a small verdict for the plaintiff.

The defendant now moves for a new trial and judgment *non obstante veredicto*.

The reasons assigned for the new trial and judgment raise several interesting questions of law.

First of all, is an abutting property owner liable for damages caused by the fall of a tree which stands in front of his land but within the limits of a State highway?

Section 2 of the Act of May 31, 1911, P. L. 468, provides: "The State Highway Commissioner is directed to construct or improve and thereafter maintain and repair, at the cost and expense of the Commonwealth, the highways forming the plan or system of the State highways in the several counties and townships, etc.," and that the highway commissioner, in the construction and maintenance of the State highways, shall enjoy and possess, in addition to the powers conferred by the act, "all the rights and powers conferred by existing laws on supervisors or commissioners in townships in the construction and maintenance of township roads."

The defendant contends that the State had absolute and exclusive control of the highway and, hence, of the tree which fell, and was alone responsible for any damage caused by the fall.

The tree did not fall by reason of the construction, improvement or repair of the highway. It stood within the limits of the road, it is true, but it was not placed there by the public authorities, nor was it in any way connected with the traveled surface of the way.

It is conceded that the defendant is the owner in fee of the land on which the tree stood, and it follows, also, that it was the owner of the tree.

In Chambers v. Furry, 1 Yeates, 167, the court held that in a highway the right of passage belongs to the public, but the right to the soil, the stones, wood or grass continues in the owners of the lands. See, also, Sanderson v. Haverstick, 8 Pa. 294.

Not only is a tree the property of an abutting land owner, but it cannot be removed or destroyed by the public authorities without compensating the owner: Seaman v. Washington, 172 Pa. 467.

For many years, property owners have been in the habit of planting shade trees in front of their properties, either with the express or implied consent of the highway authorities, without constituting a nuisance per se, but they may become a nuisance by disease or decay: City of Allegheny v. Zimmerman, 95 Pa. 287.

The right of ownership of abutting property owners in trees standing in the highway and their responsibility for these trees has been recognized by the courts. Thus, a property owner has restrained a municipality from cutting down a tree in front of his property: Gitt v. Hanover Borough, 4 Dist. R. 606. And an owner may be indicted for maintaining a nuisance if a tree in front of his property constitutes an unreasonable obstruction to the carriage way: Com. v. Hauck, 103 Pa. 536. See, also, Act of July 14, 1917, P. L. 840. Section 6 of the Act of 1911, supra, provides that the State Highway Department shall have exclusive authority over and jurisdiction of State highways, and there is no doubt that it is the duty of the highway commissioner to abate nuisances within the boundaries of the highway. But this does not relieve the abutting property owner of his liability for his affirmative act in creating or maintaining a nuisance in front of his property. It may be true that the property owner cannot open the highway in front of his property without the consent of the highway department, but if he did open it, with or without its consent, and negligently left a hole so that it became a nuisance, he would be liable for the consequences of his act.

The defendant relies on the case of McCormick v. Allegheny County, 263 Pa. 146, as authority for the proposition that the State alone was responsible for the tree. In this case, a suit was brought against Allegheny County for damages sustained by a pedestrian on a sidewalk along and upon a county road. The court based its decision in that case firmly upon the Act of June 26, 1895, P. L. 336, which vested the maintenance of county roads exclusively in the county commissioners and excluded every other agency or authority from any management or control over them. In the opinion of the court below, which was approved in a per curiam opinion by the Supreme Court, Judge Swearington said, in speaking of the Act of 1895: "In section 16, all road supervisors, authorities, persons and townships are expressly excluded from any management or control of such [county] roads, and are relieved from all responsibility therefor." It will also be noted that this was a sidewalk and that it had been laid by the public authorities, and not by the abutting property owner, who had nothing whatever to do with it.

Falco *v.* Bryn Mawr Trust Company, Administrator.

The industry of counsel and our own research have failed to disclose a single authority in Pennsylvania directly on the point. Turning to other jurisdictions, we find a New Jersey case, Weller *v.* McCormick, 52 N. J. L. 470, in which the facts were very similar to the case at bar and in which the abutting property owner was held liable.

We are of the opinion that the fact that this was a State highway and that the State had the management and control of the road, with the duty to maintain and repair it, does not relieve the defendant from liability for maintaining a nuisance, which the jury found this tree to be, within the limits of the highway.

If we concede, however, that there was a misjoinder and the State was the proper party defendant, another interesting question arises. The defendant not having filed an affidavit of defence, can he now interpose the defence that the wrong party was sued? Section 16 of the Practice Act of May 14, 1915, P. L. 483, provides: "Neither party shall be permitted at the trial to make any defence which is not set forth in the affidavit of defence or plaintiff's reply, as the case may be, except as provided in sections 7 and 13." Section 7 applies to defences made by fiduciaries and defines the nature of a defence which an executor, guardian, etc., may file. It does not apply to this case where no affidavit was filed. Section 13 provides that in actions of trespass, the averments in the statement of the person by whom the act was committed, the agency or employment of such person, the ownership or possession of the vehicle, machinery, property, etc., involved, and all similar averments, if not denied, shall be taken to be admitted, except that the averments of facts relied on by the plaintiff to show liability and the averments as to damages need not be answered.

Section 16 of the act, limiting the defences to those raised by the affidavit of defence, should be strictly enforced: Meyers *v.* Somerset Trust Co., 75 Pa. Superior Ct. 40. And where a defendant does not file an affidavit of defence, he goes to trial with all the averments of the statement admitted except the averments as to negligence and damage: McGlinchey *v.* Steigerwalt, 73 Pa. Superior Ct. 520.

The very purpose of the Practice Act was to define, limit and frame the issue, and neither party is to be permitted at the trial to make any defence which is not set forth in the pleadings: Williams *v.* Williams, Exec'x, 79 Pa. Superior Ct. 189.

In Gillespie et ux. *v.* Pennsylvania Co., 272 Pa. 393, a case in which no affidavit of defence was filed, Justice Simpson, in delivering the opinion of the court, said: "Where no affidavit of defence has been filed, plaintiff need not prove whose negligence caused the injury or death of which complaint is made, and defendant will not be permitted to contest that question, but the proofs must show that the injury or death resulted from actual negligence of the character averred in the statement of claim, that plaintiff was damnified by reason thereof, and the extent of his damages."

The proofs in this case measure up to this standard. If the defendant wished to interpose the defence that the Commonwealth alone was liable, it had an opportunity of so doing by filing an affidavit of defence. It cannot remain silent and then at the trial undertake to inject a new issue.

The statement made by the court which is complained of was not technically a part of the charge to the jury, but was given as a reason for refusing to affirm a point submitted by the defendant. If it was error, the defendant was not injured, because there was ample evidence from which the jury could

have found that the defendant was the owner of the real estate and, hence, of the limb which fell.

Defendant also contends that the tenant and not the defendant was liable. The defendant cannot interpose this defence, since it was not raised by an affidavit of defence: Gillespie v. Pennsylvania Co., supra; Williams v. Williams, Exec'x, supra; Meyers v. Trust Co., 75 Pa. Superior Ct. 40.

Conceding, however, that the defence was properly raised, what are the facts? The defendant offered in evidence a lease of the premises in question to one Proferro. This lease was dated October, 1923, and was for the term of one year from April 1, 1924. There was some evidence of the tenancy of Proferro on the property for several years, but the nature of the lease or its terms do not appear.

The court, in its charge, left it to the jury to say if the tree had become a nuisance in October, 1923. If this was error, the defendant benefited, because the jury should have been instructed to consider whether the tree was in such a condition as to constitute a nuisance before April 1, 1924.

The witness Warren, a very intelligent witness, testified that he first noticed the tree in January, 1924, and the witness Piazza, an ignorant Italian gardner, described the tree, through an interpreter, as a "little dead in September, 1923." Taking into consideration that trees do not decay in a few weeks or a few months, we are of the opinion that there is evidence from which the jury could have found that the tree was in an obviously dangerous condition before the lease of Proferro went into effect on April 1, 1924. This being the fact, the defendant could not, by leasing the real estate to a tenant, avoid liability to a third party for the continuance of a nuisance which before such leasing it was its duty to abate: Knauss v. Brua, 107 Pa. 85.

Lastly, the defendant contends there was not sufficient evidence produced on the part of the plaintiff to justify the submission of the case to the jury. Counsel for the defendant argues that the evidence shows that the tree was dead, and it is a well known fact that a dead tree, simply because it is dead, is no more likely to fall than a living tree. He cites Albright v. Sewickley Township School District, 7 D. & C. 403, and Mardo v. Coal Co., 279 Pa. 210, to sustain his position. But the evidence shows that this was more than a dead limb. The witness Warren, a disinterested and intelligent witness, says of the limb at different parts of his testimony: "There was a large limb which was on the side of the tree toward the road which was wormy and was part of the decayed tree." "The thing that attracted my attention was when walking under it, it had all the evidence that it might fall, and I remember looking up, most of the trunk was decayed." When asked if the condition of the tree as to the large decayed limb was visible to any one walking or passing by, this witness replied: "To a person who would observe, it would seem to me it was." Again, he was asked, in cross-examination, whether a person would discover the condition of the limb unless he observed rather closely. He replied: "I believe most pedestrians would discover it." This witness had observed this tree for nine months before it fell, and on his testimony alone the jury could have found that the tree was a nuisance and that it had existed as a nuisance long enough to give the defendant constructive notice, especially in view of the fact that the tree stood along such a great artery of commerce as the Sandy Hill Road.

The two cases cited by the defendant can be distinguished on their facts from the case at bar. Mardo v. Valley Coal Co., 279 Pa. 209, was a case of a partly-dead tree. Albright v. Sewickley Township School District, 7 D. & C. 402, has nothing to do with the case whatever, but we presume that defend-

Falco *v.* Bryn Mawr Trust Company, Administrator.

ant meant to cite Thorndike *v.* Buena Vista Springs Hotel Co., 7 D. & C. 403. This was also the case of a dead tree, and both these cases turned upon the fact that there was no evidence that the decayed, rotten or dangerous condition of the tree could have been observed before the fall. The trees were merely dead. In the present case, however, there is evidence that the decayed and dangerous condition of the tree was obvious.

We have considered the motion for a new trial and the motion for judgment *non obstante veredicto* together, and, for the reasons set forth above, we now make the following order:

And now, to wit, Jan. 24, 1927, the motion for a new trial is overruled and all the reasons given in support thereof are dismissed, the motion for judgment *non obstante veredicto* is refused, and an exception is hereby granted to the defendant to our action in refusing said judgment.

From Aaron S. Swartz, Jr., Norristown, Pa.