[No. 14492. In Bank. — March 28, 1892.]

ERNEST CERF, APPELLANT, v. JACOB PFLEGING ET AL., RESPONDENTS.

TOWN SITE — TITLE AND AUTHORITY OF MUNICIPAL OFFICIALS. — Under the act of Congress of March 2, 1867, entitled "An act for the relief of the inhabitants of cities and towns," the corporate authorities of the municipalities were mere trustees for the occupants of the lands within the limits of the municipality, and were to execute their trust under such regulations as might be prescribed by the legislature.

ID. — MAP OF TOWN — PLATTING OF STREETS — PETITION FOR DEED — DEDICATION. — After the passage of the act of March 2, 1867, the mere adoption by the town authorities of an official map of the town, which showed a street laid out through lands in the actual occupation of a private person at the date of the act, did not affect the right of the occupant to the land so designated as a street; and the fact that the grantees of the occupant, in petitioning the municipal authorities for a deed of the land, described it by reference to the map did not have the effect to dedicate the land designated as a street to public use.

ID. — CONVEYANCE BY REFERENCE TO PUBLIC STREET. — A conveyance of other parts of such land, described by reference to such street, did not have the effect to dedicate the lands so designated as a street to public use; and the conveyance of the lands so designated, although the deed describes it as a street, was neither a dedication nor an offer to dedicate it as such.

APPEAL from a judgment of the Superior Court of San Luis Obispo County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Venable & Goodchild*, for Appellant.

*William Shipsey* for Respondents.

TEMPLE, C. — Appeal from judgment and order deny-ing a new trial.

This action was brought against the city of San Luis Obispo and its street superintendent to enjoin the open-ing of a street therein.

The city of San Luis Obispo, formerly the town of that name, was located upon public lands of the United States, and acquired title under an act of Congress en-titled "An act for the relief of the inhabitants of cities and towns," passed March 2, 1867.

March 23, 1868, the legislature passed an act defining the limits of the town, and authorizing her board of trus-tees to enter these lands "in trust for the several use and benefit of the occupants." (Stats. 1867–68, p. 245.) The statute authorized the board to ascertain who were the beneficiaries of the trust, and to determine conflict-ing claims, and directed them to execute deeds to the proper parties.

The act of Congress referred to provided that the cor-porate authorities in such cases might enter the lands "in trust for the several use and benefit of the occupants thereof, according to their respective interests."

The board, therefore, was a mere trustee for the occu-pants, and by the terms of the act of Congress was to execute the trusts under such regulations as might be prescribed by the legislature.

As early as 1866, one Murray was in possession of a tract consisting of 31.78 acres within the town limits. At that time the tract was not divided into blocks and lots, and no streets extended through it.

In 1869 the town trustees caused the town to be sur-veyed, of which survey a map was made, called the Har-ris and Ward map, which was adopted as the official map, and deposited in the recorder's office in 1870, but not filed until 1878. This map embraces the 31.78 acres, and shows it laid off into blocks and lots, and the piece of land in controversy as a part of Pacific Street, which is in accordance with the claim of defendants. October 5, 1871, a patent was issued to the town trustees

by the United States, in accordance with the act of
Congress. The 31.78-acre tract was part of the land
granted. November 8, 1870, a petition was presented by
the successors in interest of A. Murray to the trustees for
a deed to said tract. The petition referred for descrip-
tion to an annexed map, which was that portion of the
Harris and Ward map which included the Murray tract.
A description was also attached, defining the boundaries,
which mentioned some of the streets by name, particu-
larly Pacific Street. The streets marked on the map,
except Pacific, were opened after the survey, and have
been traveled as the necessities of the public required.
Pacific Street also, except the portions in controversy
here, has been opened and traveled for many years.
That portion has never been opened or used as a street,
and no special ordinance or resolution has been passed
by the town trustees accepting the street. November
22, 1870, the trustees, acting upon the above petition,
granted and authorized the deed, "always saving and
excepting from the operation of this conveyance so
much as is covered by streets, lanes, and alleys." Feb-
ruary 7, 1872, the president of the board executed the
deed, making no reservation as to streets. In 1872 the
recipients of the deed from the trustees sold and con-
veyed by eight several deeds parcels of land, part of
the Murray tract, in which deeds reference is made to
the Harris and Ward map as follows: "According to the
official survey and map made by Harris and Ward on
file in the recorder's office of said county." February
16, 1874, the grantees of the town executed to plaintiff
a deed to the premises in controversy, describing it by
reference to the lines of Pacific Street, and as "being a
part of Pacific Street."

It is also found that in 1872 the grantees of the town
agreed with E. H. Smith to sell him a corner lot adjoin-
ing the land in controversy, — whether a part of the
Murray tract is not found; that Smith by mistake built
on the lot in controversy a house worth $150, which is
still there; that the grantees of the town refused to con-

vey to him because the land was a street. Plaintiff also claims under E. H. Smith, who conveyed to him.

It is obvious that the conveyance of the title by the city did not affect the tenure by which the land was held. The title was still the possessory title, quieted by a release to the occupants of the title of the United States. It was still affected by the previous acts of the owners, as though no new title had been acquired. But necessarily, as also by express provision of the legislative act, the trustees were required to decide, in the first instance, who were the occupants within the meaning of the act of Congress. It is contended that the town, by the survey and map marking streets upon this land, laid claim to them as streets; and when the petitioners annexed to their petition a copy of the map, they recognized the strips of land marked on the map as streets as rightfully so marked; that the trustees, finding that the claim of the town was conceded in the petition, awarded the deed, reserving the streets conceded. But can the mere making of a map be regarded as the assertion of a claim to the streets? It must be assumed that the town authorities knew that they did not own the streets, and could acquire no right to them by surveying and platting them upon an official map. It is not a very unusual proceeding, and may be regarded as a suggestion to the owner, who it may be presumed could more profitably dispose of his lands as lots than otherwise, that it was the proper subdivision to be made. The acts of the officials could certainly have no greater effect. But the land-owner may adopt a survey made by the town, and convey lots and blocks according to it, and thereby perhaps dedicate streets designated upon it. In this case, however, the only evidence which tends to show that the owner of the land adopted the map is the fact that the streets have been opened and are being used by the public, except that portion of Pacific Street in question here. How they came to be opened does not appear, but from the fact that they have been opened and used for some length of time, without objec-

tion, we may infer that it was by consent of the owners. But how can we infer from that a consent to the use of lands which have not been thrown open to the public and not used? Undoubtedly, we are at liberty to infer that the proprietors did not propose that all the other streets should be open, and to obstruct Pacific Street at this point. Certainly they expected, at some time or other, that Pacific Street would be open through its entire extent. But this does not constitute the *animus dedicandi*, which must include not only a general intention that, some time or other, the land shall be surrendered to the use of the public, but a present offer. There must be the act of giving, — the actual offer and acceptance.

Property cannot be taken for public use without compensation, unless the owner is willing; and this willingness should be manifested by clear and unmistakable acts. Parties are not to be done out of their property by doubtful implications, no matter how greatly the public may be inconvenienced. Has the owner freely given, or is he by some act estopped from denying that he has, is the real inquiry in every such case. Otherwise it would constitute a taking *in invitum* for public use without compensation. It does not appear that the owners have conveyed any of the land by lot or block, or as bounded by any of the streets. The only references to streets are as above stated. A street mapped might be as good a landmark as a street legally established, and such a conveyance disregarding subdivisions was held in *People* v. *Reed*, 81 Cal. 70, to be a withdrawal of an offer to dedicate previously made.

A deed bounding land upon a street merely existing upon a map or plat, made by the owner of the land as a convenience in selling, implies, in favor of the grantee, that the street is there according to the description. There is no such implied covenant in a deed describing land as bounded upon a public highway established by public authority. The grantor in such case assumes no responsibility in regard to the highway. Each party is equally well acquainted with the law in accordance

with which the highway exists or may be abandoned. And it has been held, and the conclusion seems reasonable, that the rule is the same where a highway has been laid out, but not yet opened, by public authority. (*In re Opening of Brooklyn Street*, 118 Pa. St. 640; *Bellinger* v. *Union Burial Ground Soc.*, 10 Pa. St. 135.) Much less should the mere mention of streets as landmarks which have been platted by the town authorities without leave of the owners have such effect. It is plain that the conveyance of the identical property in question, describing it as a part of Pacific Street, cannot have that effect. A mere statement of the owner of land that it constitutes a part of a street is certainly not an offer to dedicate, although it may be a probative fact of some value in determining whether he had not previously dedicated it. Here the very act asserts the contrary. He would not have conveyed the property for a valuable consideration, intending thereby to give it to the public, unless the grantee had a special interest in having it so dedicated. Precisely the contrary appears. There was a house upon it, which evidently the grantee desired to acquire, and presumptively to hold and enjoy with the land. Such a dedication would be inconsistent with the grant, and void if so intended. The grantor would be dedicating the land of another.

I think the case should be remanded, with directions to set aside the judgment in favor of the defendants, and enter judgment for the plaintiff as demanded in his complaint.

VANCLIEF, C., and BELCHER, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the case is remanded, with directions to the court below to set aside the judgment in favor of the defendants, and enter judgment for the plaintiff, as demanded in his complaint.

Rehearing denied.