[L. A. No. 9344. In Bank.—March 30, 1929.]

E. A. HARE et al., Respondents, v. MARY C. CRAIG, Appellant.

Chas. D. Swanner and Roland Thompson for Appellant.

Scarborough, Forgy & Reinhaus and Tipton & Cailor for Respondents.

SEAWELL, J.—Plaintiffs and respondents have failed to file a brief or to furnish the court with points and authorities in aid of their cause. Said plaintiffs brought the action to establish an easement by prescription to use as a right of way the whole of lots 9 and 10, block B, Baker's Addition Tract, town of Westminster, county of Orange, and to restrain defendant, Mary C. Craig, from obstructing or destroying said right of way. Defendant is the owner of the westerly thirty-four feet of the strip of land over which the right of way is claimed and of an undivided one-half interest in the remaining sixteen feet of said land. Plaintiffs own land adjoining lots 9 and 10 on the west. Upon the trial it was conceded by defendant that a right of way existed over the easterly sixteen feet of lots 9 and 10. The court below entered judgment for plaintiffs, decreeing the

existence of a right of way over the entire strip of land, from which defendant appeals.

The complaint is in two counts, which are practically identical with the exception that in count one the use by which plaintiffs claim to have acquired a right of way by prescription is alleged to have commenced in 1910, and in count two, 1877 is designated as the date of commencement.

The court found, in language following the complaint almost word for word, that on or about June, 1877, the plaintiffs and their predecessors in interest commenced to occupy and use the strip of land over which the right of way is claimed for ingress and egress to their respective homes; "that said occupancy and use by the plaintiffs and their predecessors in interest was open, continuous, uninterrupted, adverse and under a claim of right and with the knowledge and acquiescence of the defendants and their predecessors in interest and estate; that the plaintiffs and their predecessors in interest and estate occupied and used said strip of land in the same manner and to the same extent that the said land had been occupied and used from the beginning (June 1877) and until on or about the 7th day of December, 1923, when the same was obstructed by defendants."

Appellant here contends that the finding that the use of plaintiffs was with the "knowledge and acquiescence of defendant and her predecessors in interest and estate" is a finding that the use was permissive and not adverse. Although more appropriate language might well have been used, it is apparent from said finding, considered as a whole, that the object of this declaration was not to imply that the use was by license or permission, but, rather, that defendant and her predecessors had "acquiesced" in the sense that they had not committed acts which would interrupt the continuity of the adverse use and prevent the running of the statutory prescriptive period of limitations.

The conclusion of the court below that an "adverse use" was initiated in 1877 by plaintiffs' predecessors in interest and estate, which ripened into an easement appurtenant to land now owned by plaintiffs, is, as to the date when said user was found to have commenced, directly contrary to the evidence. Until 1889 the lands now owned by plaintiffs and defendant constituted a portion of a large tract held in single ownership. An owner's use of paths

and roadways upon his own land cannot be "adverse," or give rise to an easement of right of way in favor of subsequent purchasers of a portion of said tract. An easement of right of way is a right in the land of another, and necessarily implies a separation in the ownership of the land over which the easement is claimed and the land to which it is appurtenant.

In 1888 a map dividing the tract into residence lots was filed for record. At that date title to the lots over which the right of way is claimed and to the lots now owned by plaintiffs was vested in the same persons. In 1889 lot 11, to which plaintiff Marie L. Harris now claims title through mesne conveyances, was sold, and in 1892 lots 9 and 10, over which the right of way is claimed, were transferred, the ownership of lot 12 being retained. Thus, as to lot 11, 1889, rather than 1877, is the earliest date at which a prescriptive use could have been initiated by the predecessors in interest of plaintiff Marie L. Harris, and as to the southern half of lot 12, now owned by the Hares, 1892 is the earliest date. There is absolutely no showing, however, that the persons who owned the southern half of lot 12 prior to the time plaintiff E. A. Hare and his son acquired title by deed in 1910, occupied said lot 12 or made any use, adverse or otherwise, of lots 9 and 10 as a right of way. Plaintiff E. A. Hare testified that when he acquired the said property it was vacant land. This would tend to negative a use of lots 9 and 10 by the owners of the southern half of lot 12. Proof as to the use of lots 9 and 10 by the owners of lot 11 prior to the conveyance to Marie Larter Hare in 1912 is also lacking. A right of way by prescription appurtenant to said lot 11 and the southern half of lot 12 could not be established except by a use in connection with said lots.

█ Although a continuous adverse use of a right of way for five years from the dates of acquisition of lot 11 and the southern half of lot 12 by members of the Hare family in 1912 and 1910, respectively, would be sufficient to establish a right by prescription, we are not disposed, as an appellate court, to make a finding as to the existence of a private right of way appurtenant to plaintiffs' lands, for it does not appear as a matter of law that a private right of way was thus acquired. There is evidence tending to establish a

dedication to the public as a roadway, based on long user by the public of not only the easterly sixteen feet of said lots but of the entire fifty-foot strip, and a right in plaintiffs to use the roadway without interference as members of the public, rather than as owners of a private right of way appurtenant to land. ▆ When the public or such portion of the public as had occasion to use a road has traveled over it for a period of more than five years with full knowledge of the owner, without asking or receiving permission to do so and without objection being made by anyone, a conclusive presumption of dedication to the public arises. (*Hartley* v. *Vermillion,* 141 Cal. 339 [74 Pac. 987]; *Lantz* v. *City of Los Angeles,* 185 Cal. 262 [196 Pac. 481]; *Leverone* v. *Weakley,* 155 Cal. 395 [101 Pac. 304]; *Southern Pac. Co.* v. *Pomona,* 144 Cal. 339 [77 Pac. 929]; *Schwerdtle* v. *County of Placer,* 108 Cal. 589 [41 Pac. 448].)

▆ Lots 9 and 10 embrace a strip of land fifty feet in width by 314 feet in length, running through the center of block B from Almond Boulevard, the main street of Westminster, on the south, to a public street on the north which is not named in the record. At the time McCoy owned the entire tract, between 1873 and 1887, there was a path on the easterly thirty-four feet of said lots bounded by a row of cypress trees on each side and a wagon-road on each side of the trees. Witnesses for plaintiffs testified that the entire fifty-foot area was used by the public generally as a road. One of said witnesses remembered the roadway from 1877, and others were familiar with it from early dates. Said witnesses had used the roadway and never knew of any permission having been obtained from the owners or of any objection having been made to its use. When plaintiff E. A. Hare purchased the south one-half of lot 12, lots 9 and 10 appeared to constitute a public street and he built his house with the front facing said lots. During his ownership the public generally had used the lots as a roadway, he testified. O. J. Day, who conducted a grocery-store facing on Almond Boulevard on the lot adjoining lot 9 on the east, testified that he had lately discovered that the two lots were privately owned, but had not known this for many years.

In the face of this evidence we cannot find that plaintiffs gained a private way appurtenant to their lands by prescriptive use commencing in 1910 as to the southern one-half of

lot 12, and 1912 as to lot 11. The complaint as it now stands is based on the theory of a private way appurtenant to plaintiff's lands, and would not sustain a judgment based on the theory of dedication to the public use as a roadway.

Judgment reversed.

Richards, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.