[Civ. No. 4585.    Fourth Dist.    Sept. 24, 1953.]

O. D. ARNOLD et al., Respondents, v. THE CITY OF SAN DIEGO, Appellant.

354

J. F. DuPaul, City Attorney, Alan M. Firestone and Mona Andreen, Deputy City Attorneys, for Appellant.

Herney & Herney for Respondents.

MUSSELL, J.—Plaintiffs brought this action against the city of San Diego to quiet title to Lots 1 to 5, inclusive, in Block 2, College Park Unit No. 1 in said city. The city filed an answer alleging that it is the owner of an easement for street and highway purposes over and across the westerly portion (approximately 50 feet) of each of said lots and also filed a cross-complaint in which it is alleged that the said

westerly portion of said lots is subject to easements as a public street and highway in favor of the public and abutting property owners, and was dedicated and accepted as a public street and highway for more than five years prior to the filing of said complaint, and has been in open, continuous and notorious use by the public and abutting property owners as a public street and highway ever since dedication.

The trial court found that the westerly portion of said lots involved had not been dedicated either to the defendant or the general public as a public street or highway; that the use of said property by the public for street and parking purposes was not exclusive, hostile, adverse or under any claim of right and that "neither the defendant, nor the general public, was at any time in the actual, or the open, or the notorious, or the uninterrupted, or the exclusive, or the hostile possession of said real property or any part or any portion thereof."

Defendant appeals from the judgment which was entered in favor of plaintiffs quieting their title to all the property described in the complaint.

A subdivision of College Park Unit No. 1 was filed of record in the office of the county recorder August 18, 1931, as map number 1296. This map shows that Lots 1 to 5, inclusive, run east and west; that they are bounded on the east by College Avenue and on the west, a 20-foot alley extends northerly and southerly along the westerly end of said lots. The subdividers were the Mission Palisades Corporation and Bell-Lloyd Corporation. Subsequent to the time of filing the subdivision the subdividers revised the subdivision map and in a letter to the city planning commission, dated March 30, 1932, offered to dedicate all of Lots 1 to 5, inclusive, Block 2, in said subdivision, to the city of San Diego as a plaza. The subdividers then, through their officers, appeared before the planning commission on April 7, 1932, to obtain an approval of the revised subdivision map. The minutes of the planning commission show that the commission voted to reject a portion of certain alleys and adopt certain streets shown on the revised map. However, the minutes do not show that the plan for the plaza was accepted and the revised map was never filed for record. In 1932 the subdividers caused the approximate westerly 50 feet of said lots, together with the said alley and a small triangular point of land to the southwesterly end of the area to be graded, paved and curbed. The paved area connected with Mission Valley Road, now called Montezuma

Road, on the south, and Commerce Avenue, now called Bonito Paseo, on the north, and was approximately 70 feet in width. The subdividers painted the word "Plaza" on the curbs of the paved area.

From the time of the paving of this area by the subdividers until 1950 the street was used by the public as a public street without protest or objection of the subdividers or any subsequent owners. The plaintiffs acquired title to Lots 1 to 5, Block 2, in 1944, and at the time of acquiring the property Mr. Arnold personally inspected the area and had knowledge of the existence of the paving and curbing and the use of the area by the public. The record does not contain any evidence indicating that plaintiffs objected to the use of the paved area as a street until 1950 when Mr. Arnold erected posts across the southerly end of the paved area, which posts were removed by the city the day following their erection. Since the removal of the posts, the whole of the said paved area has been in use by the public without interruption or objection from anyone.

The principal question here involved is whether the said paved portion of Lots 1 to 5, inclusive, is subject to an easement as a public street and highway.

The question of whether the use of an easement is adverse and under a claim of right, or permissive and with the owner's consent, and whether the nature of the user is sufficient to put the owner on notice, are ordinarily questions of fact, and all conflicts must be resolved in favor of the prevailing party and the evidence viewed in the light most favorable to him. (*O'Banion* v. *Borba,* 32 Cal.2d 145, 147, 148 [195 P.2d 10].) However, in *Hare* v. *Craig,* 206 Cal. 753, 757 [276 P. 336], it is held that:

"When the public or such portion of the public as had occasion to use a road has traveled over it for a period of more than five years with full knowledge of the owner, without asking or receiving permission to do so and without objection being made by anyone, a conclusive presumption of dedication to the public arises. (*Hartley* v. *Vermillion,* 141 Cal. 339 [74 Pac. 987]; *Lantz* v. *City of Los Angeles,* 185 Cal. 262 [196 Pac. 481]; *Leverone* v. *Weakley,* 155 Cal. 395 [101 Pac. 304]; *Southern Pac. Co.* v. *Pomona,* 144 Cal. 339 [77 Pac. 929]; *Schwerdtle* v. *County of Placer,* 108 Cal. 589 [41 Pac. 448].)"

As was said in *Sanger* v. *Southworth,* 87 Cal.App.2d 16, 18 [195 P.2d 482]:

"An intent to dedicate may be shown by a writing or by acts of the owners. ▮ The dedication may be either express or implied. (9 Cal.Jur. 19.) It is implied when the acts of the owner indicate a clear intention to dedicate. (*People* v. *Myring*, 144 Cal. 351 [77 P. 975].) As said in 9 California Jurisprudence, page 41:

" 'Where the public, or such portion of it as has occasion so to do, travel a road, with full knowledge of the land owners interested, without asking or receiving permission and without objection, for a period of time beyond that required to bar a right of action, a right in the public to the use of the road arises by implied dedication.' "

▮ To the same effect is *Diamond Match Co.* v. *Savercool*, 218 Cal. 665, 669 [24 P.2d 783], and in *Laguna Beach* v. *Consolidated Mtg. Co.*, 68 Cal.App.2d 38, 42, 43 [155 P.2d 844], the general rules are thus stated:

" 'To constitute a valid and complete dedication there must be an intention by the owner, clearly indicated by his words or acts, to dedicate the lands to public use (*City of Venice* v. *Short Line Beach L. Co.*, 180 Cal. 447, 450 [181 P. 658]), and an acceptance either by public user or formal resolution. (*Brown* v. *Bachelder*, 214 Cal. 753 [7 P.2d 1027].) The intention to which courts give heed is an intention manifested by the owner's acts and finding expression in his conduct. (*City of Los Angeles* v. *McCollum*, 156 Cal. 148 [103 P. 914, 23 L.R.A.N.S. 378].) It may be either express or implied, and is implied when the acts and conduct of the owner indicate clearly an intention to devote the land to the public use. (*People* v. *Myring*, 144 Cal. 351, 354 [77 P. 975].) ▮ The law will imply an intention to dedicate from long acquiescence in the use of land for highway purposes, for it is settled that the common-law rule as to the presumption of dedication by adverse user is applicable in this state. (*Schwerdtle* v. *County of Placer*, 108 Cal. 589, 592 [41 P. 448].) . . .

▮ " 'Of course, where the dedication of a highway is sought to be established by user, it must be shown that the user was adverse, continuous and with the knowledge of the owner, for the required period of time. (*City of San Diego* v. *Hall*, 180 Cal. 165 [179 P. 889].) So far as the element of time is concerned, periods varying from five to forty years have been held sufficient. (*Plummer* v. *Sheldon*, 94 Cal. 533 [29 P. 947]; *Barnes* v. *Daveck*, 7 Cal.App. 487 [94 P. 779].) The adverse character of the use and the knowledge and

acquiescence of the owner may be inferred from circumstances, and long-continued adverse user establishes against the owner the conclusive presumption of knowledge and acquiescence.' "

In the instant case, the subdividers, by their acts in paving the area in question, obliterated the boundaries of the existing alley and put in curbing indicating the area to be used by the public for street purposes. The use of this area as a street by the public without objection for many years is undisputed. Plaintiffs, having purchased the property in 1944 with full knowledge of such use, did nothing to interfere at any time until 1950, interrupting it then for one day only. Under the rules stated, the paved area involved was clearly dedicated to public use and accepted by the public. The stated findings of the trial court to the contrary are not supported by substantial evidence and under the circumstances shown are not conclusive on appeal.

Plaintiffs contend that they were bona fide purchasers and their rights are protected as against any unrecorded dedication. This contention is without merit, for, as noted, plaintiff Arnold inspected the property at the time he purchased it, saw the paved area involved, bounded by curbs, and knew that the public was using it for street purposes. He was thus upon inquiry as to the character of such use. Plaintiff Arnold testified that after he inspected the property, he was informed by the city attorney that they did not want the property and that he, Arnold, would not have bought the lots had he known of the city's claim of an easement; that he was not aware that the city claimed any rights in the property until six years after he had purchased it. There was also evidence that the said paved area was not listed or dedicated as a street in the record books of the city. Apparently that was not done for the reason that there had been no map filed showing a formal dedication. These circumstances are not sufficient to nullify the implied dedication and acceptance by the public of the disputed area as a street.

Plaintiffs also argue that the California Planning Act of 1929 (Stats. 1929, ch. 838, p. 1805, 2 Deering's Gen. Laws, Act 5211b) prohibits the city planning commission from acquiring property by "dedication" except where such rights are first approved by the planning commission and accepted by the city's legislative body. However, the city of San Diego is a chartered city and is not subject to general laws in matters concerning municipal affairs except as the charter itself may provide (*Heilbron* v. *Sumner*, 186 Cal. 648,

650 [200 P. 409]), and it does not appear that the said planning act was incorporated therein.

Judgment reversed.

Griffin, Acting P. J., concurred.

A petition for a rehearing was denied October 16, 1953, and respondents' petition for a hearing by the Supreme Court was denied November 19, 1953. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.