[Sac. No. 6419.   In Bank.   Feb. 19, 1954.]

UNION TRANSPORTATION COMPANY (a Corporation) et al., Appellants, v. SACRAMENTO COUNTY et al., Respondents.

Horace E. Dunning for Appellants.

Gerald M. Desmond and Jerome M. McLaughlin for Respondent Sacramento County.

Johnson, Davies & Greve and Claire H. Greve for Respondent El Dorado County.

EDMONDS, J.—A bridge located near the boundary line between the counties of El Dorado and Sacramento collapsed when a truck owned by Union Transportation Company, a corporation, was driven over it. The truck was loaded with cattle belonging to George and Ray Smith, doing business as copartners under the name of Smith Brothers. The trucking company and the cattle owners jointly sued both counties under the Public Liability Act of 1923 (Stats. 1923, p. 675; Gov. Code, §§ 53050-53056).

The appeal from a judgment which followed an order granting the counties' motions for a nonsuit presents the question as to the sufficiency of the evidence to require the submission of the issue of liability to the jury. Rulings upon the admissibility of certain evidence also are challenged.

The record, viewed most favorably to the appellants, shows the following facts:

A dirt road originating at White Rock in Sacramento County roughly parallels the county line across several ranches. About 2 miles from White Rock it crosses into El Dorado County, but after a short distance returns to Sacramento County where it terminates near the ranch owned by Smith Brothers. At a point on the short loop of the road within El Dorado County, it crosses Carson Creek on the Smith Brothers' property over a bridge, which at the time of the accident was made of wood. The bridge had been erected about 30 years before, but the record does not show who constructed it or the road.

For many years, the road had been used by the ranchers in the vicinity and their friends to provide access to United States Highway 50 at White Rock. Also, various members of the public traveled over it, generally about once each week, but occasionally as frequently as 20 times in a single day. About twice each year, the road was graded. The record does not show at whose instance this work was done, but there is testimony that the equipment used was county owned. On one occasion, the machinery was identified as belonging to Sacramento County, and it was shown that the operator was a Sacramento County employee. The bridge was repaired extensively in 1937, but by whom is not disclosed.

The record includes ample evidence of a dangerous and defective condition of the bridge when it collapsed. Several witnesses who examined the wreckage testified as to extensive rotting of the supporting timbers. Expert witnesses stated that the load carried by the truck was not excessive and, had

the bridge been in a proper condition, it could have supported the loaded truck with safety.

In support of the judgment, Sacramento County contends that there is no proof that the bridge is within that county; instead, all of the evidence tends to show that it is within El Dorado's boundaries. Accordingly, it is argued, there is no basis for an action against Sacramento County for failing to maintain the bridge.

El Dorado takes the position that the evidence is insufficient to show in which of the two counties the bridge is located. But even if it may be shown to be within El Dorado County, the argument continues, there was no duty upon that county to maintain it. Another contention is that any defect must be deemed to have been a latent one, imparting no constructive notice to the governing authority of its dangerous character.

The county surveyor of El Dorado County testified that the monuments described in section 23134 of the Government Code as marking the boundary between the two counties are no longer available. However, based upon the monuments mentioned in certain unofficial maps of the area, his calculations showed that the bridge is located within El Dorado County about 200 feet from the boundary line.

According to his testimony, he could not be certain as to the true location of the boundary, and he did not know whether the line drawn by him was correct. El Dorado argues that these statements compel the conclusion that the testimony was based upon speculation and entitled to no weight. (*Cf. McKellar* v. *Pendergast,* 68 Cal.App.2d 485, 489 [156 P.2d 950].) But the witness stated that no exact line could be drawn and, in making his survey, he followed the same procedure as would be used by any competent surveyor. ■ Furthermore, his line and the monuments used to locate it correspond to those shown in the official topographical map of the United States Geological Survey, which is one of which courts take judicial notice. (Code Civ. Proc., § 1875, subd. 3; *Rogers* v. *Cady,* 104 Cal. 288, 290 [38 P. 81, 43 Am.St.Rep. 100] ; *Varcoe* v. *Lee,* 180 Cal. 338, 343 [181 P. 223].)

The theory of the Smiths and the trucking company is that the road of which the bridge is a part, although originally a private one, has become a public highway by implied dedication arising from long acquiescence on the part of the adjacent landowners in its use by members of the public. El Dorado's position is that certain statutory provisions, as

well as public policy, prevent public user alone from casting upon a county the duty to maintain and repair what otherwise would be a private road. It argues that no such duty arises until the road is recognized as a county highway and taken into the county's road system "by a very definite act of acceptance."

A common law dedication has been described as "a voluntary transfer of an interest in land . . . [which] partakes both of a nature of a grant and a gift, and is governed by the fundamental principles which control such transactions." (*County of Inyo* v. *Given,* 183 Cal. 415, 418 [191 P. 688]; *People* v. *Dreher,* 101 Cal. 271, 273 [35 P. 867].)

Essential to such a dedication are an offer by the owner of the land, clearly and unequivocally indicated by his words or acts, to dedicate the land to a public use and an acceptance by the public of the offer. (*Manhattan Beach* v. *Cortelyou,* 10 Cal.2d 653, 660 [76 P.2d 483]; *People* v. *Dreher, supra,* at p. 273; *Cerf* v. *Pfleging,* 94 Cal. 131, 135 [29 P. 417]; *San Francisco* v. *Canavan,* 42 Cal. 541, 552-553.)

Many cases hold that an offer to dedicate land may be inferred from the owner's long acquiescence in a public use of the property under circumstances which negative the idea that the use was under a license. (*Hargro* v. *Hodgdon,* 89 Cal. 623, 630 [26 P. 1106]; *Niles* v. *City of Los Angeles,* 125 Cal. 572, 577 [58 P. 190]; see *City of San Diego* v. *Hall,* 180 Cal. 165, 168 [179 P. 889]; *F. A. Hihn Co.* v. *City of Santa Cruz,* 170 Cal. 435, 448 [150 P. 62].)

In another line of decisions, by analogy to the doctrine of prescription, it is held that "[w]hen the public or such portion of the public as had occasion to use a road has traveled over it for a period of more than five years with full knowledge of the owner, without asking or receiving permission to do so and without objection being made by anyone, a conclusive presumption of dedication to the public arises." (*Hare* v. *Craig,* 206 Cal. 753, 757 [276 P. 336]; *People* v. *Myring,* 144 Cal. 351, 354 [77 P. 975]; *Hartley* v. *Vermillion,* 141 Cal. 339, 349 [74 P. 987]; *Arnold* v. *City of San Diego,* 120 Cal.App.2d 353, 356-357 [261 P.2d 33].)

"Of course, where the dedication of a highway is sought to be established by user, it must be shown that the user was adverse, continuous and with the knowledge of the owner, for the required period of time." (*Diamond Match Co.* v. *Savercool,* 218 Cal. 665, 669 [24 P.2d 783].) Whether the user was adverse is a question of fact to be determined from all

of the circumstances of a case. (*O'Banion* v. *Borba,* 32 Cal. 2d 145, 149-150 [195 P.2d 10].)

The distinction between the two theories is well expressed in *Schwerdtle* v. *County of Placer,* 108 Cal. 589 [41 P. 448], where it is said: "If a dedication is sought to be established by a use which has continued a short time—not long enough to perfect the rights of the public under the rules of prescription—then truly the actual consent or acquiescence of the owner is an essential matter, since without it no dedication could be proved and none would be presumed; but where this actual consent and acquiescence can be proved, then the length of time of the public use ceases to be of any importance, because the offer to dedicate, and the acceptance by use, both being shown, the rights of the public have immediately vested.

"But where the claim of the public rests upon long-continued adverse use, that use establishes against the owner the conclusive presumption of consent, and so of dedication. It affords the conclusive and undisputable presumption of knowledge and acquiescence, while at the same time it negatives the idea of a mere license." (P. 593.) Dedication by adverse user has been characterized as one implied by law; one inferred from the acts of the owner or from his acquiescence in public user may be termed a dedication implied in fact. (*Diamond Match Co.* v. *Savercool, supra,* at 218 Cal. 669; *Laguna Beach* v. *Consolidated Mfg. Co.,* 68 Cal.App.2d 38, 43 [155 P.2d 844].)

In the present case, the evidence clearly supports the determination that the road and bridge had been used by the public for a period of at least 12 years and that such use was known by the owners of the land. There is further testimony to the effect that maintenance and repair work was performed on the road and the bridge by someone other than the owners, and there is no evidence that they at any time objected or interfered with this user. From these facts, as well as the general appearance, location and evident purpose of the road and bridge it could be inferred either that the landowners intended by acquiescing in their user to dedicate them to the public or that the user was adverse and that it continued so for a period greater than five years. (*Cf. Hargro* v. *Hodgdon, supra; Niles* v. *City of Los Angeles, supra; Bolger* v. *Foss,* 65 Cal. 250, 251 [3 P. 871]; *Harding* v. *Jasper,* 14 Cal. 642, 647-648.)

El Dorado takes the position, however, that to permit the fact of public user to support a determination that the road has been dedicated to the public is contrary to section 904 of the Streets and Highways Code, which provides: "No route of travel used by one or more persons over another's land shall become a county highway by use." This section is based upon former section 2621 of the Political Code (Stats. 1883, p. 6) which provided in part: "[N]o route of travel used by one or more persons over another's land shall hereafter become a public road or by-way by use, or until so declared by the board of supervisors or by dedication by the owner of the land affected."

This legislation was intended to rectify the somewhat confused statutory situation which existed prior to its adoption. Before the enactment of the Political Code in 1872, there were in force various statutes, applicable to certain counties designated by name, making all roads used by the public for a specified period of time public highways. The new code continued in force all such prior statutes [relating to roads and highways applying to particular counties by name]. (§ 2757.) At the same time, it provided in another section that "[r]oads laid out and recorded as highways . . . and all roads used as such for a period of five years, are highways." (§ 2619.) As a result, in some counties both section 2619 and a specific statute provided for the establishment of public highways by use.

In 1874, section 2619 was amended by deleting reference to establishment of public highways by use; but the amendatory legislation was part of an act naming only certain counties. (Amendments to the Codes, 1873-1874, p. 116 et seq.) Thereafter, confusion arose in regard to the result of public user of a road in the counties not specified in the amendatory statute. Section 2621 was then enacted for the purpose of making certain the legislative intention that in all counties the former provision concerning user for five years was no longer effective. (See *Huffman* v. *Hall,* 102 Cal. 26, 29 [36 P. 417].)

The elimination of that provision, however, does not mean that general use of a private road may not evidence the owner's intention to dedicate it to a public use. As stated in *Lantz* v. *City of Los Angeles,* 185 Cal. 262 [196 P. 481], "[t]here can be no question but that since the enactment of . . . section [2621] of the Political Code in its present form the mere user of a route of travel by the public for a period

of five years or more did not of itself suffice to constitute the strip of land used by said route of travel a public highway. It was essential, in order to do so under said section of the code, that such strip of land must have either been so declared to be by the board of supervisors of the county . . . in which the same was located, or must have become so by dedication by the owner of the tract; but it does not follow from this that the user of such strip of land by the public may not constitute some evidence of its dedication which, taken with other evidence, showing expressly or by implication and intent on the part of the owner of the land to dedicate the same to public uses, may amount to sufficient proof of such dedication thereof as would satisfy the provisions of the foregoing section of the Political Code.'' (P. 268; see, also, *Leverone* v. *Weakley,* 155 Cal. 395, 401 [101 P. 304].)

Even if an offer to dedicate the road may be inferred, El Dorado argues, there is not sufficient evidence showing that such offer was accepted by the county. The appellants rely upon several cases which hold that a public user alone is sufficient to show acceptance of such a road. (*People* v. *Myring, supra,* 144 Cal. at p. 354; *Venice* v. *Short Line Beach Land Co.,* 180 Cal. 447 at p. 450 [181 P. 656] ; *Diamond Match Co.* v. *Savercool, supra,* 218 Cal. at p. 670; *Sanger* v. *Southworth,* 87 Cal.App.2d 16, 19 [195 P.2d 482] ; accord, *San Francisco* v. *Canavan,* 42 Cal. 541, 554; *Smith* v. *San Luis Obispo,* 95 Cal. 463, 471 [30 P. 591] ; *Hall* v. *Kauffman,* 106 Cal. 451, 452 [39 P. 756] ; *Helm* v. *McClure,* 107 Cal. 199, 204 [40 P. 437].) In none of these cases was the cause of action based upon the asserted liability of a political subdivision for failure to maintain a way so dedicated, and no California decision has been found which settles that question.

The courts in other jurisdictions are not in accord concerning whether a governmental body may be held liable for failure to maintain a road when its only acceptance is from public user. In some cases liability is imposed upon the theory that it would be inconsistent to permit public user to establish a right against the landowner without an official acceptance of such a dedication, but not to permit members of the public to claim a right against the governmental body. They hold that the general public, being principals, may accept the dedication without action by the elected officials, who are merely their agents. (*City of Hammond* v. *Maher,* 30 Ind.App. 286 [65 N.E. 1055] ; *Green* v. *Canaan,* 29 Conn. 157; *Manderschid* v. *Dubuque,* 29 Iowa 73 [4 Am.Rep. 196] ;

244

*Benton* v. *City of St. Louis*, 217 Mo. 687 [118 S.W. 418, 129 Am.St.Rep. 561]; see cases cited in footnotes to §§ 170-171 of 1 Elliott, Roads and Streets [4th ed. 1926] pp. 198-202.)

█ The ground of decisions to the contrary is that, although elected officials are merely agents of the public, they are the only means by which the public may act, and to permit a small segment of the public by use of a private way to impose the burden of maintaining it upon the general public would be in dereliction of the powers of the elected officials, and permit the establishment of public roads in undesirable places. These cases generally require that there be some official action consistent with an acceptance of the dedication. (*Hillside Cotton Mills* v. *Ellis*, 23 Ga.App. 45 [97 S.E. 459]; *Harrington* v. *Manchester*, 76 N.H. 347 [82 A. 716]; *Johnson* v. *City of Niagara Falls*, 230 N.Y. 77 [129 N.E. 213]; *People ex rel. Shurtz* v. *Highway Com'rs*, 52 Ill. 498; see cases cited in 4 Tiffany, Real Property [3d ed. 1939] §§ 1107, 1217, pp. 354-358, 609-610; 26 C.J.S., Dedication, § 37[c], pp. 101-102; 16 Am.Jur., Dedication, § 35, pp. 383-384.) Considerations of public policy compel the conclusion that the latter principle is preferable.

█ Under this rule, however, no formal act of acceptance is necessary. Any action of the responsible public officials showing an assumption of control over the road is a sufficient recognition of the road as a public highway. (See 4 Tiffany, Real Property, § 1107, p. 354].) █ In the present case, there is evidence that El Dorado's superintendent of roads dispatched road equipment to that section of the road with instructions to the operator to make repairs on it. Although the records shows that no repairs were made, the action of the superintendent in assuming control of the road reasonably supports an inference that the county impliedly had accepted the dedication.

█ El Dorado further contends that it has no statutory authority for making repairs upon the road. However, the boards of supervisors of the counties are expressly enjoined, under section 941 of the Streets and Highways Code, by proper order to "cause those highways which are necessary to public convenience to be established, recorded, constructed, and maintained in the manner provided in this division."

█ And it is no defense to a claim of dedication to a county that the road does not meet the specifications generally required for county highways. (*Mulch* v. *Nagle*, 51 Cal.App. 559, 568 [197 P. 421].)

There is no merit in the contention that the evidence would not support a finding that the defective condition of the bridge could have been discovered by a reasonable inspection. Several persons who examined the debris stated that the rotted condition of the supporting timbers was visible and apparent. Generally, the question of whether a defective condition is such as to impart constructive notice is one of fact. (*Sheldon* v. *City of Los Angeles,* 55 Cal.App.2d 690, 693 [131 P.2d 874].) It reasonably could be found that a proper inspection of the bridge would have disclosed the condition.

In their briefs, the appellants apparently have abandoned any contention that Sacramento County may be held liable for the damages suffered. All of the evidence relied upon by them is presented for the purpose of showing that the bridge is located within El Dorado County, and no authority has been cited which would permit a court to hold a governmental body liable, on any theory of dedication, for injuries sustained on a highway without its boundaries.

The judgment as to El Dorado County is reversed. As to Sacramento County, it is affirmed. The costs of Sacramento County will be borne by the appellants; the appellants' costs will be borne by El Dorado County.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.