[Civ. No. 8404.   Third Dist.   Oct. 20, 1954.]

PAUL E. MORSE, Respondent, v. JESSE C. MILLER et al., Appellants.

Ralph V. Devoto for Appellants.

Brown, Smith & Ferguson and Jacqueline Taber for Respondent.

SCHOTTKY, J.—This is an appeal from a judgment decreeing that certain real property owned by defendants and appellants has been dedicated to public use for beach and athletic field purposes, and is also subject to easements for similar use in favor of plaintiff and respondent and other property owners on whose behalf he sued. Said judgment also perpetually enjoined defendants from interfering with either the public or private use of the property.

The real property here involved now consists of three parcels, two of them forming what is known as the ''beach,'' and

the third comprising the "athletic field." The beach property, now divided into two parcels, is bounded on the west by the low water line of Clear Lake, and on the east by the center line of a road known as "Lakeshore Road." This property extends along the road for a distance of approximately 1,120 feet, and its northern and southern boundaries (from the road to the lake) are approximately 450 and 230 feet long, respectively. The athletic field property lies just east of the beach, the center line of Lakeshore Road forming a common boundary between them. Its frontage along this road is about 700 feet, and it is bounded on the other three sides by streets. These properties originally were a part of a larger acreage, consisting of two tracts aggregating about 330 acres, which Charles L. Austin acquired in the early 1920's. At least part of this acreage, including the beach and athletic field properties, is located in the Second Supervisorial District of Lake County. There is no incorporated area within the district.

The following map [see page 240], which was introduced in evidence, will serve to illustrate the location of the properties here involved.

After Austin acquired the acreage it appears that portions of it were offered for sale and sold to the public. Six tracts had been subdivided, and maps of them had been recorded when, in 1928, Austin, who was an engineer, prepared a composite map showing the subdivided tracts and also showing the beach and athletic field properties. This last map was not recorded, but it is important because of its use in connection with the sale of lots thereafter.

It also appears that the beach and athletic field properties were used for resort purposes. Without detailing all of the improvements, it may be noted that a dance hall, an entertainment center, and a bath house were erected on the beach property, the beach itself was improved and beach and life-saving equipment installed, and a grandstand was built on the athletic field property. Although the dance hall and entertainment center (pinball games, etc.) were operated for profit, and food and other refreshments were sold and bathing suits rented, it is apparent that the resort was operated primarily as a promotional venture to attract prospective purchasers of lots to the premises. Such attractions as pageants, rodeos, and athletic contests were held at the athletic field for the entertainment of visitors and without cost to them. The beach proper and the athletic field were open to the public for recreational purposes and no charge was made, even for the use

of the bath house. This free use of the beach and athletic field was one of the inducements used in promoting the sale of lots.

Austin was succeeded by a corporation, the Austin Resort and Land Company, which he formed for that purpose. The trial court found that the corporation acquired the property prior to December 27, 1927, and Austin testified that the corporation was formed in 1925. He also testified that he sold "property" (lots) in the Clear Lake Woodlands "tract" (see map, Plaintiff's Ex. 2) prior to 1928, and that at the time he

sold property in that tract the corporation owned all of the property. There is also a copy of a letter in evidence, from Austin to Goldberg, his sales manager in Los Angeles. (Plaintiff's Ex. 16.) This letter is dated December 27, 1927, and refers to a proposed agreement between "Austin Resort and Land Company" and Austin Athletic and Country Club, the latter being an unincorporated association comprised of lot owners in the Athletic and Country Club Tract. The agreement in question was to protect lot buyers in their use of the beach, boat harbor and athletic field, and Austin testified that his attorney later prepared such an agreement and that its execution by Austin Resort and Land Company was authorized by that company's board of directors.

The corporation subsequently became insolvent and bankruptcy proceedings were instituted. In May, 1936, appellant LaBree and her husband, J. T. LaBree, acquired a portion of the bankrupt's property at Clear Lake, including the beach and athletic field, from the trustee in bankruptcy. The resort was operated by the LaBrees during the 1936 and 1937 seasons, and by Mrs. LaBree, alone, in 1938, her husband having died in December, 1937. In September, 1938, appellants Miller purchased the athletic field property, and all of the beach property except the southerly 120 feet thereof, from Mrs. LaBree. The portion retained by Mrs. LaBree is designated on the map, hereinbefore reproduced, as Parcel IA; the part conveyed to the Millers is called "Assessors Tract 1." The athletic field property is identified as "Assessors Tract 2." The principal resort buildings are located on Assessors Tract 1, and the Millers have made substantial improvements and have continued to operate the resort. Since 1944, appellant LaBree has leased Parcel IA to tenants who give swimming lessons and care for small children there.

Plaintiff and respondent is the owner of property purchased from the corporation in 1929. This property is located in the Athletic and Country Club Tract which is one of the subdivisions shown on the unrecorded map made by Austin in 1928. Respondent sued on his own behalf and as a representative both of the general public and of the residents and property owners in the supervisorial district. The amended complaint sets out four alleged causes of action. The first count is based on the theory that appellants' predecessor in title, i.e., the corporation, expressly dedicated the beach and athletic field properties to the public; the second is based on the theory of implied dedication through public user; the third is based on the theory that respondent and other residents and

property owners in the district acquired private easements, for use of the beach and athletic field, through prescription; and the fourth is based on the theory that the private easements were acquired by grant (or estoppel) by virtue of the use of the unrecorded map, and representations made on behalf of the corporation, in connection with lot sales.

By the action respondent sought declaratory and injunctive relief. The case was tried by the court sitting without a jury. During the trial, at the close of respondent's case, a motion for nonsuit was granted with respect to the first cause of action. After trial, but prior to findings and judgment, respondent waived his claim with respect to the portion of the beach property (being the northerly part of Assessors Tract 1) on which the resort buildings were located.

The court found:

"That said Austin Resort & Land Company, a corporation, while the owner of the property described in Finding III above, intended to and did devote the beach and athletic field to public use; that said Austin Resort & Land Company, a corporation, in order to induce people to purchase lots in said subdivisions, promised such prospective purchasers that they, as purchasers and owners of such lots, would have the perpetual right to use the beach and athletic field as such; that the right to use said beach and athletic field enhanced the value of said lots sold to the said purchasers and formed part of the consideration for the sale of said lots; that plaintiff and other owners of lots in said subdivisions, relying on said representations, purchased lots therein from said corporation."

The court found further that the corporation prepared maps of the property which described the "beach" and "athletic field," which maps were shown to prospective purchasers and to the public generally, and it was represented by the corporation that said beach and athletic field would be forever retained and reserved as such, and prospective purchasers of lots were assured that as purchasers of lots they would have perpetual right to the use of said beach and athletic field.

The court found further that the said corporation, "while owner of said property, encouraged the public to use said property and induced the public to come upon and use said beach and athletic field in order that said corporation itself might be benefited and erected structures on the said beach and athletic field in order to further attract the general public to said property and to induce the use thereof."

The court found further:

"That no sign has ever been posted at any time on said beach or said athletic field by any owner thereof limiting or restricting the use of said property or indicating that the use thereof by the public or by the various lot owners was permissive or that the right to the use of said property was revocable."

"That the public in general and the owners of lots in the subdivisions mentioned in Finding IV hereof, have used said beach and athletic field properties as a beach and an athletic field since December 1927; that such use by the public and by the various lot owners has been actual, exclusive, open, notorious, uninterrupted and under claim of right since December, 1927; that neither the general public nor said lot owners has ever asked or received permission for such use of said properties; that such use by the public and by the lot owners was made of said property with the full knowledge of the owners of said property and that said owners never, at any time, made any objection to such use by the public or the lot owners."

"That Jesse C. Miller and Luella N. Miller, his wife, and Josie V. LaBree, prior to their purchase of the said property described in Finding III hereof, knew of the said use of the said property by the public and the lot owners."

Also:

". . . [T]hat while said Jack LaBree and Josie V. LaBree were owners of said properties, the said Jack LaBree sold a number of the said subdivided lots and as a part of the consideration for the purchase price of said lots, said Jack LaBree promised said purchasers that they would have a perpetual right to the use of the beach and athletic field for beach and athletic field purposes."

Judgment was entered in accordance with said findings decreeing (1) that the owners of lots in the tract of land which is located in the Second Supervisorial District, County of Lake, State of California, which was acquired by the Austin Resort and Land Company, a corporation, prior to December 27, 1927, are owners of an interest or easement in the two parcels owned by appellants Miller (excluding the portion waived by respondent) and in the parcel owned by appellant LaBree, which interest or easement consists of the right to use the property for an athletic field and beach, and (2) that said real property of appellants has been and is dedicated to the public for an athletic field and beach. Appellants were perpetually enjoined from interfering in any way with the

right of the public or the right of the "owners of lots in said Austin tract" to use said property as a beach and athletic field. Said judgment is, of course, to be construed as giving the right to use the beach property only for beach purposes and the athletic field property only for athletic field purposes.

As grounds for reversal of the judgment appellants urge: (1) That the evidence is insufficient to support the findings and judgment that the real property of the appellant, or any part of it, has been dedicated or is dedicated to the public for an athletic field and beach; and (2) that the evidence is insufficient to support the findings and judgment that respondent has an easement to use the said real property for an athletic field or beach. We shall discuss these contentions in the order of their statement.

The law applicable to dedication of property to public use has been well stated in the recent case of *Union Transportation Co.* v. *Sacramento County,* 42 Cal.2d 235, at pages 240-241 [267 P.2d 10]:

"A common law dedication has been described as 'a voluntary transfer of an interest in land . . . [which] partakes both of a nature of a grant and a gift, and is governed by the fundamental principles which control such transactions.' (*County of Inyo* v. *Given,* 183 Cal. 415, 418 [191 P. 688]: *People* v. *Dreher,* 101 Cal. 271, 273 [35 P. 867].) Essential to such a dedication are an offer by the owner of the land, clearly and unequivocally indicated by his words or acts, to dedicate the land to a public use and an acceptance by the public of the offer. (*Manhattan Beach* v. *Cortelyou,* 10 Cal.2d 653, 660 [76 P. 2d 483]; *People* v. *Dreher, supra,* at p. 273; *Cerf* v. *Pfleging,* 94 Cal. 131, 135 [29 P. 417]; *San Francisco* v. *Canavan,* 42 Cal. 541, 552-553.)

"Many cases hold that an offer to dedicate land may be inferred from the owner's long acquiescence in a public use of the property under circumstances which negative the idea that the use was under a license. (*Hargro* v. *Hodgdon,* 89 Cal. 623, 630 [26 P. 1106]; *Niles* v. *City of Los Angeles,* 125 Cal. 572, 577 [58 P. 190]; see *City of San Diego* v. *Hall,* 180 Cal. 165, 168 [179 P. 889]; *F. A. Hihn Co.* v. *City of Santa Cruz,* 170 Cal. 435, 448 [150 P. 62].)

"In another line of decisions, by analogy to the doctrine of prescription, it is held that '[w]hen the public or such portion of the public as had occasion to use a road has traveled over it for a period of more than five years with full knowledge of the owner, without asking or receiving permission to do so and without objection being made by anyone, a con-

clusive presumption of dedication to the public arises.' (*Hare* v. *Craig,* 206 Cal. 753, 757 [276 P. 336]; *People* v. *Myring,* 144 Cal. 351, 354 [77 P. 975]; *Hartley* v. *Vermillion,* 141 Cal. 339, 349 [74 P. 987]; *Arnold* v. *City of San Diego,* 120 Cal. App.2d 353, 356-357 [261 P.2d 33].)

" 'Of course, where the dedication of a highway is sought to be established by user, it must be shown that the user was adverse, continuous and with the knowledge of the owner, for the required period of time.' (*Diamond Match Co.* v. *Saver-cool,* 218 Cal. 665, 669 [24 P.2d 783].) Whether the user was adverse is a question of fact to be determined from all of the circumstances of a case. (*O'Banion* v. *Borba,* 32 Cal.2d 145, 149-150 [195 P.2d 10].)

"The distinction between the two theories is well expressed in *Schwerdtle* v. *County of Placer,* 108 Cal. 589 [41 P. 448], where it is said: 'If a dedication is sought to be established by a use which has continued a short time—not long enough to perfect the rights of the public under the rules of prescription—then truly the actual consent or acquiescence of the owner is an essential matter, since without it no dedication could be proved and none would be presumed; but where this actual consent and acquiescence can be proved, then the length of time of the public use ceases to be of any importance, because the offer to dedicate, and the acceptance by use, both being shown, the rights of the public have immediately vested.

" 'But where the claim of the public rests upon long-continued adverse use, that use establishes against the owner the conclusive presumption of consent, and so of dedication. It affords the conclusive and undisputable presumption of knowledge and acquiescence, while at the same time it negatives the idea of a mere license.' (P. 593.) Dedication by adverse user has been characterized as one implied by law; one inferred from the acts of the owner or from his acquiescence in public user may be termed a dedication implied in fact. (*Diamond Match Co.* v. *Savercool, supra,* at 218 Cal. 669; *Laguna Beach* v. *Consolidated Mfg. Co.,* 68 Cal.App.2d 38, 43 [155 P.2d 844].)''

Appellants rely strongly on *Manhattan Beach* v. *Cortelyou,* 10 Cal.2d 653 [76 P.2d 483], *F. A. Hihn Co.* v. *City of Santa Cruz,* 170 Cal. 436 [150 P. 62], and *People* v. *Rio Nido Co., Inc.,* 29 Cal.App.2d 486 [85 P.2d 461], in support of their contention that the evidence does not support the finding of implied dedication. They quote from *Manhattan Beach* v. *Cortelyou* at page 660, as follows:

". . . there must be an offer by the owner to appropriate it for such purpose and the intention so to do must be clearly and unequivocally manifested. This is the vital principle of dedication." They quote also from *F. A. Hihn Co.* v. *City of Santa Cruz*, at pages 447-448, as follows:

". . . [W]e think the evidence was not such as to support a finding of dedication. In order to constitute a valid dedication, there must be an intention on the part of the owner to devote his property to the public use. (*California Navigation Co.* v. *Union Transportation Co.*, 126 Cal. 433 [58 P. 936, 46 L.R.A. 825] ; *Niles* v. *Los Angeles*, 125 Cal. 572 [58 P. 190].) It is true that this intent may be inferred from long acquiescence in a use by the public. But where land is uninclosed and uncultivated, the fact that the public has been in the habit of going upon the land will ordinarily be attributed to a license on the part of the owner, rather than to his intent to dedicate. This is more particularly true where the user by the public is not over a definite and specified line, but extends over the entire surface of the tract. It will not be presumed, from mere failure to object, that the owner of such land so used intends to create in the public a right which would practically destroy his own right to use any part of the property."

They quote further from the opinion of this court in *People* v. *Rio Nido Co., Inc.*, at pages 491-494:

"A dedication, being a voluntary transfer, as pointed out in *County of Inyo* v. *Given*, 183 Cal. 415 [191 P. 688], partakes both of the nature of a grant and also a gift, and is governed by the fundamental principles which control such transactions. It consists of an offer and acceptance and both of those elements must be clearly and definitely established. There must be the intention of the owner to dedicate to public use clearly indicated by his words or acts, and unequivocal proof of the acceptance. One of the strongest prohibitions against the government is that it cannot deprive one of his private property without just compensation, unless the owner is willing, and this willingness should be manifested by clear and unmistakable acts. Parties are not to be done out of their property by doubtful implications, no matter how greatly the public may be inconvenienced.' (*Cerf* v. *Pfleging*, 94 Cal. 131 [29 P. 417].) . . . Even if it is held that there was an offer to dedicate, which we cannot find, there was no acceptance of such offer by or upon behalf of the public. There was no formal acceptance by resolution

of any governing body and for that reason no statutory dedication. Nor was there such use by the public as to indicate an intention to accept. To establish a public use respondent introduced evidence to the effect the area had been used by the neighboring property owners and by others for picnics, camping and for a playground. But such uses were intermittent; the site was, after a period of twenty years, in the same condition as when the tract was originally surveyed, except for the accumulation of rubbish. . . . In fact, the use made of the tract was the same use as would be made of any uninclosed wooded tract near any inhabited area. In *City of San Diego* v. *Hall*, 180 Cal. 165 [179 P. 889], it was said, 'something more than a mere casual user must be shown before any valid dedication will be implied.' . . . The county did nothing to evidence the fact that any park existed on the site in question. It assessed the land to individuals for tax purposes and collected the taxes so levied. . . ."

The trial court in its memorandum opinion stated:

". . . [T]he evidence preponderately establishes the case of plaintiff upon each cause of action. It may be stated however, that the testimony of Mr. Austin, the original owner, upon the intent to dedicate the property to public use as well as an intent to grant a common easement to lot owners is convincing if not conclusive. His testimony is corroborated in so many details by that of other witnesses that there is no escape from the conclusion that a dedication of the property to public use was intended, and actually accepted by the public.

"The contention of defendants that they had no notice of the easement is of no particular merit. The facts are against them on this issue."

We are satisfied that there is ample support in the record for the conclusions reached by the trial court. While there is some conflict in the evidence, the findings of the court hereinbefore set forth find ample support in the record. The testimony of Austin and of numerous other witnesses, together with the maps and other evidence, are sufficient to support a finding that it was the intention of the original owners to dedicate the beach to the public for beach purposes and the athletic field for athletic field purposes; and there is likewise sufficient evidence of public user of the beach and athletic field from 1928 to 1929 down to the time of the commencement of action to support a finding that the public not only accepted such use but claimed and insisted

upon its right to such use. Under well established rules of appellate procedure we are not concerned with conflicts in the evidence, nor are we concerned with the fact that different inferences could be drawn from the evidence than were drawn by the trial court. It was for the trial court to resolve whatever conflicts there were in the evidence as issues of fact are determined in the trial court and not in the appellate court.

Appellants rely strongly on *F. A. Hihn Co.* v. *City of Santa Cruz, supra,* in which the Supreme Court reversed a judgment that certain beach lands were dedicated to public use. However, the facts in that case are readily distinguishable from the facts in the instant case. In that case, as pointed out by the court in its opinion, the fact that the public had been going upon the land and there had been no objection upon the part of the owner was not sufficient to justify a finding that the owner of the land intended to create in the public a right to use the property.

Likewise the facts in the case of *People* v. *Rio Nido Co., Inc., supra,* are distinguishable from the facts of the instant case, as is evident from the following quotation from the opinion: ''Nor was there such use by the public as to indicate an intention to accept. To establish a public use respondent introduced evidence to the effect that the area had been used by the neighboring property owners and by others for picnics, camping and for a playground. But such uses were intermittent; the site was, after a period of twenty years, in the same condition as when the tract was originally surveyed, except for the accumulation of rubbish. . . . In fact, the use made of the tract was the same use as would be made of any uninclosed wooded tract near any inhabited area.''

Appellants' second contention is that the evidence is insufficient to support the findings that respondent has an easement to use the real property in controversy for a beach and athletic field. We have hereinbefore set forth the findings of the trial court that the corporation, in order to induce people to purchase lots in the subdivisions, promised prospective buyers that they would have the perpetual right to use the beach and athletic field as such, and that respondent and others purchased lots in reliance on such representations; that the corporation prepared maps describing the athletic field and beach as such, and showed these maps to prospective lot buyers and represented that the athletic field and beach would be forever retained and reserved as such; that

the corporation, in order to sell lots in the tracts, took prospective buyers to the property and pointed out the beach and athletic field, and represented to them that they, as purchasers of lots in the tracts, would have perpetual rights to the use of the beach and athletic field; that no sign has ever been posted on the property, by any owner thereof, limiting or restricting the use or indicating that use by the lot owners was permissive or that the right to use was revocable; and that the lot owners in question have used the beach and athletic field as a beach and athletic field since December, 1927, that such use has been actual, exclusive, open, notorious, uninterrupted and under claim of right, that the lot owners have never asked or received permission for the use, and that the use was made with full knowledge of, and without objection by, the owners.

Respondent's testimony shows that when he purchased the property in the Country Club Tract from Austin in 1929, the latter told him that he (respondent) was to have the use of the beach and that the parcel known as the athletic field ''was to be used at some time for a recreation field.'' This is confirmed by Austin's testimony as to what prospective lot buyers were told, and it is evident from respondent's testimony that Austin pointed out the beach and athletic field to him on the ground.

There is also evidence that respondent built on the property and that he and his family resided there every summer after 1929. It appears that they used the beach each summer, without asking permission or paying any charge therefor. Regarding the athletic field, respondent testified that he played baseball there about 15 years ago, and that he also went there to see baseball games and athletic events. No one ever questioned his right to use the athletic field or beach. Under the circumstances of this case it would seem to be a fair inference that respondent's use of the beach and athletic field was made under claim of adverse right as against appellants who assert that they hold the property free from any easement by virtue of their status as purchasers without notice. The adverse user having been longer than the required prescriptive period, the burden was upon appellants to show, by affirmative proof, that the user was permissive.

Nor is there any merit in appellants' contention that respondent or the lot owners in the Austin tracts could not have the right to use the property as members of the public and at the same time have a private easement in it. They

cite *O'Banion* v. *Borba,* 32 Cal.2d 145 [195 P.2d 10], but that authority is against their contention, for therein the court says at page 151:

". . . the law is clear that merely because the public also uses the easement does not preclude the acquisition by an individual of a right based upon his own user. His right must be based on his individual use—rest on its own foundation rather than use as a member of the public."

In their closing brief appellants for the first time make the contention that there was no compliance here with the Conservation and Planning Act of 1947, now found in the Government Code, section 65000 et seq. This act set forth the procedure for dedication of property. Appellants assert that there was no evidence that the act was complied with and that to uphold the judgment there must be sufficient evidence of events prior to 1947 that will support the finding of dedication. Appellants then flatly state that there is not such evidence, but as hereinbefore pointed out the evidence is sufficient evidence of events occurring long before 1947 to support the findings and judgment and it is therefore unnecessary to discuss further this latest contention of appellants.

No other points raised require discussion.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.